**Louise WHITE, Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.**

No. C–C–77–203.

United States District Court,
W. D. North Carolina,
Charlotte Division.

Jan. 31, 1979.

697

Jean M. Cary, Legal Aid Society of Mecklenburg County, Charlotte, N. C., for plaintiff.

Harold M. Edwards, U. S. Atty., Asheville, N. C., Harold J. Bender, Asst. U. S. Atty., Charlotte, N. C., for defendant.

## ORDER GRANTING BENEFITS

McMILLAN, District Judge.

Plaintiff Louise White brings this action pursuant to 42 U.S.C. § 405(g) to challenge the decision of the Secretary of Health, Education and Welfare denying her application for social security disability benefits. 42 U.S.C. §§ 416, 423. Plaintiff filed her application on July 2, 1976, alleging that she became disabled on September 12, 1975. Her application was denied and she made a timely request for a hearing, which was held before an administrative law judge on February 1, 1977. Plaintiff was represented by a paraprofessional on the staff of Mecklenburg County Legal Aid; testimony was taken from plaintiff and from Mr. Edward Dowd, a vocational expert whose appearance and testimony were obtained at the request of the Social Security Administration. In an opinion dated February 23, 1977, the administrative law judge denied Ms. White's claim to benefits; his decision

was upheld by the Appeals Council in April 1977. Following the Appeals Council's initial action, plaintiff's representative submitted to the Appeals Council a letter from plaintiff's treating physician explaining the extent of plaintiff's disability. In a letter dated June 21, 1977, the Appeals Council informed plaintiff that the supplementary letter was not sufficient to support a reversal of its earlier decision. At that time the Council granted a thirty-day extension of time within which to file suit in federal court.

Plaintiff timely filed this suit on July 26, 1977. Both parties have moved for summary judgment. There are no genuine issues of material fact and the case is ready for decision. For the reasons which follow I conclude that the decision of the Secretary denying benefits is not supported by substantial evidence in the record and therefore must be reversed.

Plaintiff last met the special earnings requirement of the statute on September 30, 1976. Record at 82. The question before the Secretary, therefore, was whether plaintiff was under a disability within the meaning of the act on or before that date.

At the time of the hearing plaintiff was 47 years old. She had a fourth grade education. Record at 28. Prior to September 1975, she had worked for a mop company feeding yarn into a blender (1 year); as a domestic in private homes (3 years); as a dishwasher (intermittently for 3 years); as a folder for a uniform company (1 year); and as a machine operator at a yarn company (3 years). Record at 29–30. Ms. White has not been employed since September 1975. In that month she was involved in an automobile accident and, according to her testimony, has been unable to work since.

Ms. White testified to a number of ailments involving her back, legs, head and nerves. She had earlier been diagnosed by various physicians (including those retained by the State of North Carolina to examine plaintiff solely to evaluate her claim for disability benefits) as suffering primarily from a herniated disc and degenerative disc disease (Record at 107, 111, 112, 165), hypertensive cardiovascular disease (Record at 108, 112, 140–143, 148), and osteoarthritis of the dorsal, lumbar and cervical spine (Record at 106, 108, 122).

Plaintiff testified that she has constant pain in her lower back, which intermittently extends down her left leg and into her groin. Record at 34–35, 41, 111. The back pain prevents her from sitting up straight; she can sit for approximately one hour provided she "slouches and continually shifts position." Record at 50–51. Ms. White testified to similar difficulty with standing for any extended period (see Record at 35, 44–45) and noted that lifting, bending and twisting all caused pain (Record at 35). Ms. White also testified to a series of episodes since the September 1975 accident during which the pain in her back and legs was so severe that she was unable to alleviate it unless she stayed off her feet and remained in bed for periods ranging from a few hours to several days. Record at 36–39.

Plaintiff's hypertension affects her temper and increases her tension level; she testified to a difficulty with crowds. Record at 48–50. Since her accident in 1975, plaintiff has been beset by frequent headaches. Record at 32–33.

In addition to these maladies, plaintiff suffered from numerous other ailments during the relevant period (September 1975 through September 1976). Dr. Edward S. Mize, who has treated plaintiff since her 1975 accident, summarized Ms. White's state of health for the Social Security Administration as follows:

"Dr. Mize first saw claimant 9/20/75 after she had been in an automobile accident on 9/12/75 in which she sustained a very bad concussion. Had low back pain and a whiplash injury. She had generalized edema and 1 + pitting edema in pretibial area. Blood pressure 160/110. Claimant also in menopausal syndrome. She was quite obese weighing 235 lbs. On 2/25/76 fasting blood sugar was elevated to 130. Uric acid 12 (normal 8.3). Doctor put her on a crash diabetic diet and she is now down to 205 lbs. He has urged claimant to get another fasting

blood sugar but this has not been done as yet so he does not know if diabetes is controlled on diet at this time. Eye grounds showed very little change. Some AV nicking. She is on Zaroxilin for fluid and hypertension and in February, blood pressure 130/100 and last visit, 5/24/76, blood pressure 120/90. She does have a heart murmur which may be due to chronic hypertension. No evidence of cardiomegaly. No EKG's or chest X-rays have been done. She still has dependent edema of lower extremities, cause unknown. May be due to some recurrent urinary tract infections. BUN 17. Claimant is also developing some left sciatica of left hip joint. She also has some bowel cramps from colitis and passes some blood and mucus at times. Is on Cantil with Phenobarbital for this. Has had no weight loss from this. Her nervousness is not severe. She is on Meprobamate for nerves and Hormones have controlled nervousness very much. No abnormal behavior. She is quite a stable person and does not complain unnecessarily. She has osteoarthritis of cervical, dorsal and lumbar spine for which Dr. Carlyle, Chiropractor, has been treating her and he has done X-rays. Dr. Mize does not have X-ray reports. Claimant complains of hip pain and back pain and has muscle spasms. She tried to go back to work in February but pain in back, neck and legs prevented her from continuing work. Pain in legs probably due to compression of sciatic nerve."

Record at 108.

Based on these medical findings and his experience with plaintiff over the course of the year following her accident, Dr. Mize concluded his report with these observations:

"Diagnosis: (1) Exogenous obesity. (2) Essential hypertension. (3) Osteoarthritis of cervical, dorsal and lumbar spine. (4) Right sciatica. (5) Diabetes Mellitus.

"Prognosis: guarded as far as returning to work. Arthritis and accompanying muscle spasms prevent her from working.

"She couldn't walk as long as 1 hr. or stand as long as an hour. Could do no bending. Could not lift anything heavy." Record at 109.

Dr. Mize's findings regarding plaintiff's functional mobility restrictions were corroborated generally by Dr. Susanne S. Carlan, a gynecologist to whom Ms. White was referred for examination at the request of the North Carolina Department of Human Resources (Record at 110). Dr. Carlan concluded that as a result of plaintiff's herniated disc and chronic hypertension, she was not able to stand for more than 30 minutes to an hour, to walk for more than 15 to 30 minutes, to sit for more than one to two hours, to lift weights greater than five pounds, or to bend, stoop, or climb with regularity. Record at 119. These conclusions apparently were drawn solely from the objective medical findings of Dr. Carlan, discounting plaintiff's subjective complaints, in conformity with the instructions Dr. Carlan received from the Department of Human Resources.

The Mize and Carlan conclusions about plaintiff's mobility restrictions were supplemented by the report of Dr. R. E. Miller, an orthopedic surgeon to whom Ms. White was referred for examination by Dr. Mize. Dr. Miller, after recounting plaintiff's subjective complaints, noted that *on examination* he found plaintiff to have a 20% limitation of motion in the spine *and to have pain on forward and backward bending*. Record at 106. Dr. Miller's examination was conducted June 1, 1976.

Mr. Edward Dowd, a vocational expert, testified at Ms. White's hearing against the backdrop of these earlier medical findings. During his testimony, the following colloquy took place between Dowd and the administrative law judge:

"Q. Mr. Dowd, we have here a lady who is now 45 years of age, and she's got a 4th grade education. Her work history is as she has described it here during the hearing, and, of course, you've been present.

"If I come to the conclusion that she has these limitations—Assume she's limit-

ed to standing for 30 minutes to an hour, and that she could walk any time during the 15 minutes, or 15 to 30 minutes, and she could only sit for one to two hours at a given time.

"And if we're to assume that she would be lifting no more than five pounds, that she would be restricted from using her hands for pushing and pulling activities, or for fine manipulation, but that she could perform simple grasping motions; and further assume that she could not use her feet repetitive raising and pushing as in operating foot controls.

"She does have the ability to reach above shoulder level, and she can bend and stoop and climb, but only occasionally; and assume that she would be environmentally restricted from working at heights or where she would be exposed to mechanical or electrical hazards, or where she would be exposed to any, an excess amount of dust and lint—I don't mean she has to be in an antiseptic situation, but it should be relatively clear.

"Now, there are some factors I want to consider here, if you'll give me half a moment.

"Okay.   Assume further that she is able to communicate but that she does have a hearing impairment, particularly the right side.

\*　　\*　　\*　　\*　　\*　　\*

"Could you tell me if an individual with the background and those impairments, Mr. Dowd, could be expected to perform any work existing in this area?

"A.  Well, taking into consideration the claimant's age and the level of education, which from a vocational point of view would be considered minimal and therefore would, along with her work experience, only qualify her for what are considered to be entry level jobs, or beginning jobs, she doesn't have much in the way of transferrable skills or ability; and also considering the multiple restrictions contained in the hypothetical, all due to her impairment, in my opinion there would only be about two jobs in the economy that she could perform.

"One would be light packing, putting hose or small garments into boxes or polyethylene bags.

"And the other would be garment inspection.

\*　　\*　　\*　　\*　　\*　　\*

"Q.  Then, Mr. Dowd, for this second question I'd like you to consider, along these lines, assume that I come to the conclusion that Mrs. White would have the functional ability, that is, the mechanical ability to perform this light packing or garment inspection work you described; but because of the pains she has, the headaches and the backaches and the leg pains and these other complaints that she's had, that she would not be able to work on the same basis as other employees doing the same type of job.

"In other words, her job attendance would be spotty.  It wouldn't be as good as her co-workers.  And as pains are unpredictable as she's described it, her job attendance would be unpredictable.

"Given that situation, would you expect that she'd be able to hold any job on a competitive basis, either those that we've identified or any others?

"A.  Taking these additional factors into consideration, *it would be my opinion that she could not be gainfully employed* in any occupation in the economy."

Record at 55–59 (emphasis added).

Three weeks after the hearing on Ms. White's claim for benefits, the administrative law judge rendered an unfavorable decision.  His opinion, including the analysis of the record, is remarkable for, among other things, its brevity.  After reciting the relevant statutes and formalistically stating that all the evidence then in the record had been considered, the administrative law judge set out the reasons for his decision. The substantive portion of the opinion, including findings and conclusion, spans but two pages in the record:

"EVALUATION OF THE EVIDENCE

"The claimant alleges inability to work since September 12, 1975.  She was born

on June 4, 1931, has a fourth grade education, and primarily worked as a maid for an apartment cleaning agency.

"The medical evidence indicates that the claimant is a stable person who does not exhibit any abnormal behavior. She is hypertensive, but her blood pressure responds to medication. An electrocardiogram taken on August 4, 1976, was interpreted as being within normal limits. At this time, the claimant had no edema and had very little functional limitations as a result of obesity and degenerative disc disease of the lumbar spine (Exhibit 17).

"After an examination on June 1, 1976, revealed minimal osteoarthritic changes in the lumbar spine, it was believed that the claimant had sustained a sprain with the possibility of a herniated disc on the left. An electromyogram was carried out on June 25, 1976, which was thought to be within normal limits. A myelogram performed on November 1, 1976, showed a very small defect. Because of the negative electromyogram, the paucity of the physical findings, and the fact that the lumbar defect appeared to be very small, surgery was not recommended (Exhibits 15 and 36).

"From the foregoing, it appears that the claimant is limited to very light or sedentary work activity due to her back impairment. She does not have a significant impairment of her heart or 'nerves' and her hypertension is under fair control.

"Edward J. Dowd appeared at the hearing and testified as a vocational expert. On the assumption that the claimant had very limited ability to stand, walk, or sit for more than brief periods of time, it was his opinion that the claimant could work packing hose or small garments or as a garment inspector. He stated that there were hundreds of these jobs in the region where the claimant lives.

"FINDINGS

"The Administrative Law Judge makes the following specific findings:

"1. The claimant met the special earnings requirements of the Act on September 12, 1975, when she allegedly became unable to work, and continued to meet these requirements through September 30, 1976, but not thereafter.

"2. The claimant's back impairment limits her to very light or sedentary work activity.

"3. The claimant has no other impairment which significantly affects her ability to carry out moderate physical activities.

"4. On and before September 30, 1976, the claimant had the mental and physical capacity to perform the jobs named by the vocational expert at the hearing. Said jobs exist in significant numbers in the region where the claimant lives.

"5. The claimant was not prevented from engaging in any substantial gainful activity for any continuous period, beginning on or before September 30, 1976, which lasted or could be expected to last at least 12 months.

"6. The claimant was not under a 'disability,' as defined in the Act, commencing on or before September 30, 1976."

Record at 12–13.

■ It is clear, although implicit, that the administrative law judge found that Ms. White had met her threshold burden of demonstrating that she was unable to return to her prior, customary work. See EVALUATION OF THE EVIDENCE ¶ 4 and FINDINGS ¶¶ 2, 4. In light of the evidence, some of which is outlined *supra*, no other decision on this issue would have been supportable: plaintiff's employment history is one of involvement in physically taxing work.

Plaintiff having met her burden, the burden then shifted to the Secretary to show that plaintiff retained the residual capacity to engage in substantial gainful activity available in her economy. *Thorne v. Weinberger*, 530 F.2d 580 (4th Cir. 1976); *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975).

The analysis of the administrative law judge underlying his determination that

plaintiff was employable as a garment packer or garment inspector does not withstand scrutiny. The opinion, in its discussion of the evidence, appears to rely for its finding that plaintiff's back condition was not disabling on two exhibits. The first (Exhibit 17), the report of Dr. Carlan following her examination of plaintiff, is summarized by the administrative law judge as demonstrating that "At this time [August 4, 1976], the claimant had no edema and had very little functional limitations as a result of obesity and degenerative disc disease of the lumbar spine." Record at 12. A review of the entire report of Dr. Carlan reveals that her analysis was by no means so unqualifiedly positive. Dr. Carlan did report that plaintiff suffered from "Degenerative disc disease lumbosacral spine with minimal limitation of motion." Immediately following this comment, however, she added "X-rays L–5 spine *not* requested." Record at 112 (emphasis in original). The L–5 spine is the location of plaintiff's herniated disc. *See* Record at 107, 165. The implicit qualification of her statement is underscored by other parts of Dr. Carlan's report. In commenting on plaintiff's obesity, she stated: "She can bend and stoop and walk *as well as any other patient with her functional limitation being her lumbosacral spine.*" Record at 112 (emphasis added). Finally, when asked by the Department of Human Resources to consider explicitly plaintiff's residual functional capacities, she reported, as recounted earlier, that plaintiff was restricted in some degree with respect to standing, sitting, walking, lifting, bending, stooping, and climbing. *See* Record at 119. The administrative law judge's one sentence abstract of Dr. Carlan's ten-page report is misleading and cannot support a finding of nondisability.

The administrative law judge also relied on his interpretation of the reports of Dr. Miller and Dr. David Johnston, both of the Miller Clinic. It appears that plaintiff was initially seen by Dr. Miller on June 1, 1976. Ms. White continued to see Dr. Miller until October 1976 (after the end of the period in which she met the special earnings requirement), at which time she began to see Dr. Johnston. *See* Record at 106, 164–65. The administrative law judge paraphrased Dr. Johnston's comments of November 23, 1976, that "in view of the very small defect, the negative EMG, and the paucity of physical findings," a laminectomy was not suggested. Record at 166.

As the administrative law judge nowhere explained what inferences he thought were to be drawn from this brief comment of Dr. Johnston, the court can only surmise that he must have thought the comment demonstrated in some fashion that plaintiff's ailment was not so serious as to be disabling within the meaning of the act.

The report of Dr. Johnston is patently ambiguous. He states only that he would not recommend surgery in view, apparently, of the observable extent of the *musculoskeletal defect.* His stated reluctance to recommend that Ms. White undergo a spinal operation may reflect primarily his opinion about the pain, inconvenience and increased physical risks engendered by the operation itself weighed against the anticipated benefits. A physical impairment may support a finding of disability notwithstanding a surgical procedure might remedy the disabling condition and the surgery is not performed. *Cf., e. g., Nichols v. Califano,* 556 F.2d 931 (9th Cir. 1977); *Grizzle v. Cohen,* 297 F.Supp. 790 (W.D.Va.1969) (claimant who refuses to undergo recommended surgery not excluded *per se* from disability benefits; nature of operation must also be considered to determine if refusal is reasonable). In the absence of any further explanation of the rationale for Dr. Johnston's decision *not to recommend surgery,* his comments are not strongly probative of *plaintiff's ability to work* during the (earlier) relevant period.

The implicit suggestion that Dr. Johnston found plaintiff's ailments to be insufficiently serious as an abstract matter to justify remedial action is belied by other medical reports in the record. As noted earlier, both Drs. Miller and Johnston were affiliated with the Miller Clinic. Dr. Miller treated Ms. White for some time prior to any recorded examination by Dr. Johnston. On October 4, 1976, *four days after the last day*

*plaintiff met the special earnings require-ment of the statute,* Dr. Miller concluded that *"at the moment, I do not think she would be able to engage in competitive employment."* Record at 160 (emphasis added).

The inadequacy of the Carlan and John-ston reports as a foundation to support the Secretary's conclusion that Ms.· White was employable prior to September 1976 is fur-ther underscored by the most striking fea-ture of the administrative law judge's opin-ion: the absence of any consideration of the pain suffered by plaintiff as a result of her ailments. As recounted earlier, plaintiff testified at the hearing to continual and severe pain, occasionally requiring that she remain immobilized for extended periods. Although the administrative law judge ap-parently failed to mention this evidence, the Secretary has stated before this court that, "while pain can be a disabling affliction, subjective evidence of pain cannot over-come medical evidence to the contrary." Memorandum in Support of Secretary's De-cision at 11–12. Although this statement is perhaps true as an abstract matter, it has little to do with the record in this case. The record demonstrates that plaintiff con-sistently complained to her examining phy-sicians of pain in her back, hips, legs, and groin. *See, e. g.,* Record at 106 (June 1976 report of Dr. Miller), 108 (July 1976 report of Dr. Mize), 111 (August 1976 report of Dr. Carlan), 161 (November 1976 report of Dr. Knickerbocker). These complaints were *corroborated* by examining physicians. Dr. Miller noted that, on examination, plaintiff "has a moderate tenderness in the lumbo-sacral junction and in the left sciatic notch." Record at 106. Dr. Mize noted that plaintiff's "pain in legs probably due to compression of sciatic nerve." Record at 108. Dr. Carlan observed that Ms. White had difficulty getting on and off the exam-ining table and stated "She is unable to walk on her toes or her heels. *I feel that this probably produces excruciating pain in her back."* Record at 111–112 (emphasis added).

■ The Secretary in his memorandum seeks support from the medical report of Dr. Finegan, who was retained by the Sec-retary as a consultant. Dr. Finegan is the only physician who found no substantial impairment; Dr. Finegan is also the only physician who, it appears, formed his medi-cal opinions *without ever examining Ms. White. See* Record at 122. Such evidence, when consistently contradicted by exam-ining physicians, is highly suspect; the ad-ministrative law judge properly gave the report little or no weight, finding instead that plaintiff was *not* able to perform her customary work; the report is clearly insuf-ficient to carry the Secretary's burden of establishing residual employability.

The Secretary also argues that plaintiff's self-serving statements regarding pain need not be accepted, particularly where, as here, the claimant had been uncooperative at medical examinations; such uncooperative-ness, it is argued, may be considered in the Secretary's determination about the claim-ant's credibility. The only mention of lack of cooperation in the record is that of Dr. Carlan, who noted that plaintiff did not cooperate in providing a medical history. Record at 111. The same Dr. Carlan, how-ever, stated her belief that plaintiff was subject to periods of "excruciating" pain upon making certain movements and that she was limited to some degree through the entire range of basic motions. *See* Record at 112, 119. Furthermore, Dr. Mize, plain-tiff's own treating physician, noted in July 1976 that *"She is quite a stable person and does not complain unnecessarily."* Record at 108 (emphasis added). Dr. Mize also noted that plaintiff had tried to return to work in February 1977, but was unable to continue because of pain.

The administrative law judge did not on the record find plaintiff to be unworthy of belief; he would not have been justified in finding plaintiff's credibility greatly sus-pect, for the record demonstrated that plaintiff's subjective complaints were cor-roborated by her examiners, including the only examiner who found her to be uncoop-erative during parts of the examination, and that plaintiff had a positive motivation

for work, notwithstanding her pain. *See Thorne v. Weinberger, supra* at 582.

Plaintiff testified that her pain was so severe as to prevent her from engaging in any activity at all on an intermittent basis. Her subjective complaints of pain were substantially supported by the medical reports of record. Mr. Dowd, the vocational expert, testified that such periods of severe pain and concomitant immobility would preclude any employment. On this record, the failure of the administrative law judge to evaluate the evidence of disabling pain would support, at a minimum, a remand to the Secretary. *Thorne v. Weinberger, supra.* In this case, however, there appears to be no possibility that on remand the Secretary would have the opportunity to supplement the record by additional proceedings relevant to plaintiff's subjective complaints and then to reconsider his earlier denial. *Cf. Huckabee v. Richardson,* 468 F.2d 1380 (4th Cir. 1972). In May 1977 plaintiff suffered a stroke which caused significant nerve and muscle damage; any further tests would be seriously affected by this new condition and therefore not probative of plaintiff's condition on or before September 1976. *See* Plaintiff's Memorandum in Support of Plaintiff's Motion for Summary Judgment at 2.

A remand in this case is not required. The administrative law judge received and considered both medical and vocational evidence. The record is not inconclusive as it now stands and further evidence is practically unobtainable. Where the Secretary's decision is clearly erroneous on an adequate record, his decision may be reversed without requiring that the matter be remanded for additional factfinding. *See, e. g., Vitek v. Finch,* 438 F.2d 1157 (4th Cir. 1971). Here, the record reveals that plaintiff suffered during the crucial period from multiple ailments causing sufficient pain to preclude, according to the vocational expert, all forms of employment. The administrative law judge found that plaintiff was incapable of returning to her prior customary work and referred to no specific, significant evidence of record probative of

his conclusion that plaintiff was capable of engaging in other forms of substantial gainful activity. The Secretary has failed to meet his burden; the record only supports a finding of disability.

IT IS THEREFORE ORDERED that the Secretary's motion for summary judgment is denied; that plaintiff's motion for summary judgment is granted; and that the case is remanded to the Secretary for determination of the appropriate disability onset date and for computation and payment of the benefits for which plaintiff is eligible.