Thomas E. FIELDS, Plaintiff,

v.

Patricia HARRIS, Secretary of Health and Human Services, Defendant.

Civ. A. No. C79–193R.

United States District Court,
N. D. Georgia,
Rome Division.

Sept. 5, 1980.

Robert J. Harriss, Brown, Harriss, Hartman & Ruskaup, Rossville, Ga., for plaintiff.

William L. Harper, U. S. Atty., Curtis E. Anderson, Asst. U. S. Atty., Atlanta, Ga., for defendant.

## I. STATEMENT OF THE CASE

HAROLD L. MURPHY, District Judge.

This case is currently before the Court on plaintiff's appeal from the Social Security Administration's cessation of disability insurance benefits. The record discloses that on October 28, 1976, the plaintiff filed a claim for disability and an application for disability insurance benefits, alleging that he had been disabled since August 11, 1976, due to a broken arm, back and neck injuries, and a slight concussion. That application was denied initially on November 11, 1976, because it was believed that although the plaintiff then suffered a disabling impairment, it would not last continuously for twelve months. Plaintiff then requested reconsideration on December 8, 1976; and, on February 23, 1977, the Administration granted plaintiff's claim for disability and disability insurance benefits to be awarded

retroactively as of the alleged onset date of August 11, 1976.

By way of a letter dated May 17, 1978, the plaintiff was informed that his disability insurance benefits would probably cease. A cessation determination was made by the state agency on May 31, 1978, effective March, 1978, because the agency determined that the medical evidence then in the record indicated that plaintiff's impairments of a broken right arm and attendant limitations were no longer disabling since the condition had improved or the plaintiff had resisted further treatment. Plaintiff was formally notified on June 16, 1978 that his benefits would cease. He requested reconsideration of that termination on June 26, 1978. Upon reconsideration, the agency made the determination that plaintiff's diagnosed impairment of "partial radial nerve paralysis" was no longer of sufficient severity to prevent substantial gainful activity.

Plaintiff then requested and received *de novo* consideration by an Administrative Law Judge (hereinafter ALJ). Appearing and testifying at the hearing were the claimant, his wife, and Irene Morgan, a vocational rehabilitation counselor with whom he had worked. Plaintiff was represented by counsel. On May 31, 1979, the ALJ rendered a decision adverse to the claimant, finding that although the claimant was prevented from engaging in his former work as a plumber and pipe fitter, he could engage in sedentary employment and, therefore, was found not to be disabled within the meaning of the Social Security Act. On July 31, 1979, plaintiff requested a review of this hearing decision. When the Appeals Council upheld the decision of the ALJ on August 30, 1979, it became the final decision of the Secretary. On September 18, 1979, plaintiff commenced this action seeking judicial review of the administrative determination. 42 U.S.C § 405(g). Pursuant to 28 U.S.C. § 636(b) and this Court's Local Rule 290, this case was initially referred to a magistrate who issued his Recommendations on June 27, 1980. The Magistrate recommended that the case be remanded to the Secretary for "development of a full and fair record, and for application of the correct legal principles."

The Court has carefully scrutinized the voluminous record in this case, and studied the Recommendation of the Magistrate. The Recommendation of the Magistrate will not be adopted. Instead, the decision of the Secretary is reversed, and the claim will be remanded to the Secretary for the sole purpose of determining what benefits are due the claimant, and to address the issue of attorney's fees.

## II. STATEMENT OF THE FACTS

### A. Medical Evaluation

Plaintiff was originally found to be disabled due to the residual effects of an on–the–job accident in 1976, when he fell 30 feet from scaffolding, breaking his right arm, sustaining back and neck injuries, and sustaining a light concussion. As to the residual effects that plaintiff still suffers, he testified at the hearing that he still does not have good control of his right hand and arm and he would estimate that his grip in his right hand is about one–half that of the left. Although he can use his right arm some, i. e., he can use it to hold a tool in his hand, he cannot control the movement so as to twist or turn a screwdriver, or use a hammer to pull a nail out. He also experiences pain in his neck, back, and legs. He described the sensation in his neck as that of a knife sticking in it or a sprain. In addition to his neck hurting most of the time, he also said that his lower back and legs were in constant pain. His left leg is shorter than his right, and he wears elevated shoes to compensate for this deficiency. He also complains of dizzy spells that he experiences four to five times a day, whether sitting or standing, constant, throbbing headaches, difficulty in remembering, and a loud ringing in his ears. For these problems, he takes pain pills, muscle relaxants, and 100 mg. of Phenobarbital daily, along with 5 mg. of Valium three times a day for nervousness.

Plaintiff said that on a "good day", he tends to his rabbits and chickens at his rural home. He can take care of his personal

needs and help his wife wash the dishes and dust about the house. He no longer drives a car because he believes that he cannot, but occasionally, he drives his tractor, which is the smallest farm tractor manufactured. While these activities are those that he performs on a typically "good day", on "bad days" (4–6 days per month) he does not leave his room. The claimant does not "go off by himself" because of his fear of getting lost, and his fear of having a dizzy spell or a lapse of consciousness. His wife, to whom he had been married seven years as of the time of the hearing, corroborated this testimony, adding that she is concerned because he becomes withdrawn and stays alone in his room about four to six times a month. She added that she accompanies him everywhere, whether he is walking or whether she must drive him.

The medical evidence in the record corroborates plaintiff's narrative regarding his on–the–job accident and his reports that he has consulted physicians regarding his dizziness and the loud ringing in his ears. As a result of various examinations by, and consultations with, these physicians, the following findings and diagnoses have been made.

First, as to plaintiff's pain and limited motion in his right arm and hand, the record shows that plaintiff was treated by Dr. Hamlin Graham, an orthopedic surgeon, immediately following his accident and up to August 1, 1977. Because the plaintiff's arm had been broken and damage had been done to the nerves of the arm, the doctor set his arm and later repaired the radial nerve. Apparently, plans were also made for the doctor to perform muscle transplants to aid the plaintiff in regaining use of his arm, but the plaintiff did not return to see him.

■ Plaintiff has also been treated by Dr. Edward Johnson, another orthopedic surgeon. Dr. Johnson has treated the plaintiff for pain and weakness in his right arm, pain and spasms in the lower back and right leg, and chronic lower back strain. On July 24, 1978, the doctor recorded in his office notes that "Patient has no pain in the arm, has numbness of the right thumb and index finger. He has about 165 degrees of extension and full flexion of the right elbow. Well healed scar across the lateral aspect of the elbow." After detailing leg and back problems as well, the doctor concluded that, "I would estimate that he has about 50% permanent partial disability of the whole body due to his back injury and arm injury combined." On January 26, 1979, Dr. Johnson wrote that the plaintiff

has regained about 50% use of the right arm but at present time had continuous pain in the lower back, pain in the right arm, spells of vertigo and temporary unconsciousness, is consoled on phenobarbital 100 mg. daily

This patient has had rather severe cerebral concussion followed by post traumatic episodes of syncope and dizziness, plus chronic back strain and nerve injury to the right arm.

In my opinion, this man has total and permanent disability.

On July 9, 1979, Dr. Johnson further reported:

At the time of my last examination on Mr. Fields he was suffering from rather severe low back and bilateral leg pain requiring two to three pain tablets daily. It was my feeling at this time that this man was not able to do any physical work within the foreseeable future.

It is true that physical findings as well as x–rays have failed to substantiate his complaints, but this fact does not prove that the patient is not disabled from severe pain which is aggravated by activity.[1]

---

1. This latter report was submitted to plaintiff's counsel after the hearing was conducted and a decision rendered. The report was forwarded to the Appeals Council and considered by that tribunal.

There is language in a Fifth Circuit decision which casts doubt on this Court's authority to consider this evidence. *Johnson v. Harris*, 612 F.2d 993, 998–99 (5th Cir. 1980) ("Of course, this Court is limited to an examination of the evidence before ALJ [sic] and is not allowed to consider ... new evidence in deciding if the administrative decision was correct."). But that decision involved evidence which was submitted to the Court, not the Appeals Council. The Court surely did not intend to invalidate

On May 31, 1978, the plaintiff was examined by Dr. Exum Walker, a neurosurgeon, who evaluated the plaintiff's back problems. Dr. Walker noted additionally that plaintiff suffered right neck pain which radiates into his right arm. Although the humeral fracture had been repaired, the plaintiff still suffered extensive tissue damage. On March 30, 1979, Dr. Walker concluded that Mr. Fields had been totally disabled since August 11, 1976, and continued to be disabled through the date of the examination. He could not estimate if or when he could return to work.

Plaintiff has also been examined by Dr. Jane Pearson, a neurologist, for his dizziness, headaches, and the loud ringing in his ears. Dr. Pearson noted that the plaintiff had poor memory, pain in his leg which intensified by walking, pain and soreness in the bone on the right side of the head, from the middle over behind the ear, and weakness in the right upper extremity which "is difficult to quantitate due to pain produced on testing." Laboratory findings, including EEG and CT scan, were normal. However, the doctor prescribed Phenobarbital in a dosage of 100 mg. per day for a period of one month to control his episodic lapse of consciousness, reportedly occurring at a rate of 5–10 spells per day. Plaintiff was also examined for hearing loss by Dr. Russell H. Stovall, Jr. and by Dr. Frank S. Moody. Dr. Stovall concluded after audiometric testing that the plaintiff has a bilateral neurosensory hearing loss of a moderate degree which has stabilized. He added that plaintiff "will not need surgery unless the vertigo becomes incapacitating." Dr. Moody similarly concluded that, after repeating a number of tests which were identical to the ones performed by Dr. Stovall, the plaintiff has a high tone hearing loss essentially equal in both ears. He described the vertigo as "not a true revolving type but more of a lightheadedness with loss of consciousness, at times lasting for less than a minute." He added that the vertigo is inconsistent with ear pathology and concluded that it was his impression that "most of Mr. Fields' disability lies within the central nervous system. I refer you to Dr. Jane Pearson's report and recommendations".

Evaluations of the plaintiff's physical capacities or residual functional capacity were made by two physicians, Dr. Johnson, the plaintiff's treating orthopedic surgeon and one appointed by the state agency. The evaluation by the state agency's physician is dated May 12, 1978. The one made by Dr. Johnson is dated April 7, 1978, and is based upon an examination of the patient on March 27, 1978. Both physicians estimated that the most reasonable lifting or carrying expectation for the plaintiff would be ten pounds or less frequently. The state agency physician estimated that during a normal work day the plaintiff could stand and walk eight or more hours, while Dr. Johnson estimated that he could stand and walk only two hours. The state agency physician found that the plaintiff could sit and work as much as six out of eight hours while Dr. Johnson found that he could not. In evaluating restrictive movements and activities, both physicians found that the plaintiff could not perform pushing and pulling movements (arm or leg controls), gross manipulation (grasping, twisting, and handling), fine manipulation (finger dexterity), and that he should not work with or around hazardous machinery. Additionally, the state agency physician estimated that the plaintiff could not operate motor vehicles. Dr. Johnson found that the plaintiff could not be expected to perform bending or stooping movements or reaching (including overhead). Both physicians noted particularly that the plaintiff had difficulty in using his "right U[pper] E[xtremity]" and "righ[t] hand".

those portions of the Federal Regulations and the Social Security Act which specifically provide that the Appeals Council may consider evidence not available to the ALJ and the Court may consider all evidence in the record. 20 C.F.R. §§ 404.942; .947a(b); .948; .949; and .950; 42 U.S.C. § 405(g). See also, *Richardson v. Perales*, 402 U.S. 389, 397, 91 S.Ct. 1420, 1425, 28 L.Ed.2d 842 (1971); *Lewis v. Weinberger*, 515 F.2d 584, 586 & n.1, 587 & n.2 (5th Cir. 1975); *Cox v. Sec. of HEW*, 465 F.Supp. 1195, 1198 (E.D.Mich.1979).

Born on March 3, 1945, the plaintiff was 34 years old at the time of the hearing. He testified that in school he had gone as far as halfway through the seventh grade. However, he said that he could barely read and write. On January 30, 1979, the plaintiff was examined by Richard D. Hark, a psychologist, who, in the course of examination and evaluation of the plaintiff, administered the Wechsler Adult Intelligence Scale (WAIS), the Wide Range Achievement Test, the Halstead–Reitan Test Battery, the Bender Visual Motor Gestalt Test and Memory for Designs Test. Dr. Hark concluded that the plaintiff had the sight reading ability of the 4.2 grade level; the spelling ability of the 2.6 grade level; and the arithmetic ability of the 5.7 grade level. He also made the following diagnosis:

He is experiencing high levels of depression and anxiety at the same time. . . . Part of his reported pain, dizziness, and related symptoms are being caused by his anxiety, and psychological conflict which he converts into physical symptoms . . . . Mr. Fields is functioning in the average range of intelligence when we take into account cultural and educational deprivation. . . . His high levels of anxiety also have interfered to some degree with his ability to concentrate. . . . Academic achievement test reveals that this man is functionally illiterate. . . . He must be allowed to carry out work where he does not have to use his preferred hand to do any type of rapid finger and arm movement. . . . His level of motivation is high, and at times, he is going to be somewhat agitated or perhaps impulsive, and he should not be forced into any type of work that could be precluded by his sensory motor loss in right hand and arm. . . . At this point, I certainly would recommend [his vocational counselor to] proceed with his plans for vocational rehabilitation with Mr. Fields. . . .

Upon referral by the Division of Vocational Rehabilitation, plaintiff was seen by Dr. James Pilcher, whose report was not before the ALJ, but was submitted to the Appeals Council.[2]

Dr. Pilcher's report was initially sent to plaintiff's attorney:

As you are fully aware, the Vocational Rehabilitation Board is fully aware, and everyone involved with this patient is fully aware, Mr. Thomas E. Fields is disabled and remains totally disabled at this point. Long term employment possibilities are meager and bleak at best. I cannot foresee this patient returning to work because of injuries sustained while on the job.

He also noted in his report that the plaintiff was not retrainable because of his neurological deficits. It should be noted, however, that it is unclear whether this was a conclusion based on the Docot's own evaluation, or whether it was a conclusion based on Dr. Hark's report which Dr. Pilcher had before him.

### B. Vocational Evaluation

From 1962 until Mr. Fields' on–the–job accident in 1976, he worked as a pipe fitter and plumber. He did both commercial and residential work, primarily in the residential area. Those jobs required him to use heavy tools. Since his accident he has had numerous contacts with vocational rehabilitation but at the time of the hearing had undergone no training program.

Mrs. Irene Morgan, who is the coordinator of the Northwest Georgia Division of Rehabilitation, testified at the plaintiff's hearing. She has been a registered nurse for 40 years, and has been in the vocational rehabilitation field for the same number of years. She has worked in this capacity for the states of Tennessee, Alabama, and Georgia. She has worked with Mr. Fields for over one year (as of the date of the hearing). The following colloquy between plaintiff's attorney and Mrs. Morgan transpired at the hearing:

Q: Is there any plans for him to be evaluated [by another Doctor]?

A: Yes. . . . Due to several factors, the balance problem, the inability to cope

2. See n. 1 *supra*.

with all of the daily living activities–he cannot go by himself.

\* \* \* \* \* \*

Q: Have you formed an opinion as to whether or not Mr. Fields is able to work? A: At this point in time, I would say no .... Because of Mr. Field's particular problem with the balance, it limits terrifically what he can do. He is an extremely highly motivated individual.... Our particular problem is the dizziness, the nausea, the balance problem, strikes without warning at any time, irrespective of whether he's standing, sitting or laying.... To place a man with this kind of disability into employment, it would almost have to be self–employment.... [The medication is] partially effective, but not relieved the problem to the extent that he can function normally.

Finally, the record contains a report from Donald Anderson, Mr. Fields' vocational rehabilitation counselor for the prior year. Mr. Fields' report was not available to the ALJ, but was submitted to the Appeals Council which considered the statement.[3]

Mr. Anderson has advanced degrees in counselling and the placement of the handicapped, and has been employed by the Division of Vocational Rehabilitation for ten years. His report was based on the reports of Doctors Hark, Pilcher, Johnson and Pearson. His report was reviewed by the Appeals Council, but apparently not considered to be of particular significance. Anderson wrote

I am familiar with the Dictionary of Occupational Titles.... I have worked in the Northwest Georgia area for the past nine years and have become quite familiar with the job opportunities available in this geographical area.... I readily recognize that, with the claimant's physical limitations alone, he possibly could be placed in light or sedentary type employment. However, when you add the neurological problems which are pointed out in Dr. Jane Pearson's report, I do feel that this claimant is disabled for gainful

employment. Due to his continued episodes of dizziness and lapse of consciousness, it seems to me that the claimant remains disabled.... In Dr. Hark's report, you will note that the claimant is classified as functionally illiterate. High levels of depression and anxiety are noted as a result of the Minnesota Multiphasic Personality Inventory.... The dizziness and blackout spells which are noted by the neurologist, Dr. Jane Pearson, is possibly the major problem which prevents this claimant from returning to gainful employment. He has become quite dependent, and Dr. Hark has indicated there are high levels of depression and anxiety present.... [W]hen everything is taken into consideration, I feel that there is enough legitimate pain, disability and confusion to render this claimant as totally disabled at this time.... Mr. Fields has been most cooperative and willing to do whatever it takes to return him to gainful employment. However, after having worked with him for the past year, I continue to feel that he has been on continuous disability and is not capable of returning to gainful employment at this time.... Admittedly, there are a few days in which this claimant could possibly be employed. But regular, day in and day out, full time employment would be vertually [sic] impossible. There are days in which Mr. Fields would be unable to function physically or psychologically. I have found him to have excellent motivation.... After a careful consideration of all of his limitations and having had numerous counseling sessions with this claimant, I do *not* feel that he is capable of functioning in gainful employment even of a sedentary or light nature. [emphasis in original]

## III. THE ADMINISTRATIVE LAW JUDGE'S DECISION

The Administrative Law Judge assessed the impairments to the claimant's arm, back, and the claimant's dizziness and psychological problems.

3. See n.1 *supra.*

The plaintiff's arm impairment was found to inhibit the plaintiff's ability to perform heavy lifting, and that lighter forms of work were not beyond the plaintiff's capability. The ALJ relied on Dr. Johnson's observation that the claimant had regained 50% use of the arm and his 7/24/78 notation that "patient has no pain in the arm"; the plaintiff's admitted ability to aid his wife in dusting and dish washing; and the plaintiff's failure to keep his appointment with Dr. Graham in August 1977.

Plaintiff's back problems precluded performance of all but sedentary work. The ALJ relied on Dr. Graham's report,[4] which indicated that the plaintiff's arm, not back impairments, were disabling; Dr. Walker's recommendation that the claimant increase his activity as pain permitted; the absence of bone abnormalities revealed by x–rays; and the presence of only "some discomfort" attributable to the chronic lumbrosacral sprain.

The dizzy spells, concluded the ALJ, were not prohibitive of sedentary work. The ALJ referred to two instances when the plaintiff reported to doctors that he had "only brief spells" and these occurred "only occasionally". Also noted was the absence of any objective evidence of brain dysfunction; the audiological assessment which "did not confirm his allegations of significant hearing problems"; the plaintiff's "normal hearing"; Dr. Stovall's comment that no surgery was indicated for the vertigo unless it became incapacitating; and the ameliorative effect of the Phenobarbital.

The psychological problems were found to have no significant effect on the plaintiff's ability to engage in substantial gainful activity.

After concluding that the plaintiff could not perform heavy or moderate work, the ALJ referred to 20 C.F.R. § 404.1513 Appendix 2, Table 1 Rule 201.26. Appendix 2, commonly known as the "grid system," contains detailed criteria for the evaluation of those cases in which the determination as to

disability cannot be made on medical severity alone or on the ability to do past work. The grid system directs the judge to plug in the individual's impairment, age, education, and work experience, and then provides a factual conclusion as to the subject's disability. The system, which became effective in February, 1979, was designed merely to "consolidate and elaborate upon longstanding medical–vocational evaluation policies." 43 Fed.Reg. 55349 (Nov. 28, 1978).

The grid system directed a finding that Mr. Fields was not disabled.

The Appeals Council concluded that there was no basis for granting the plaintiff's request for review. Consideration was given to the additional reports filed by Doctors Johnson and Pilcher, and Mr. Anderson. The Doctors' reports were found to be consistent with evidence already in the case and Mr. Anderson's report was found immaterial in light of the absence of any "new or material evidence... that supports [his conclusion that the plaintiff would be unable to work for twelve months]."

## IV. DISCUSSION

### A. Judicial Review of the Secretary's Final Decision

▬ The Social Security Act empowers the District Court to affirm, modify or reverse the decision of the Secretary. 42 U.S.C. § 405(g). But it is not the task of this Court to re–weigh the evidence,. and arrive at an independent determination of disability. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Johnson v. Harris*, 612 F.2d 993 (5th Cir. 1980); *Fortenberry v. Harris*, 612 F.2d 947 (5th Cir. 1980); *White v. Harris*, 605 F.2d 867, 869 (5th Cir. 1979). The Act directs the Court to uphold the Secretary's determination if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Strickland v. Harris*, 615 F.2d 1103 (5th Cir. 1980). "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind

---

**4.** Dr. Graham treated the plaintiff following his accident in August of 1976. Mr. Fields was last seen by the Doctor in January of 1977, more than 15 months prior to the date the Secretary determined that the disability had ceased.

might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *White v. Harris*, 605 F.2d 867, 869 (5th Cir. 1979). Despite the fact that determinations which are *not* supported by substantial evidence are "unusual, even rare," *Gaultney v. Weinberger*, 505 F.2d 943, 945 (5th Cir. 1974), the Court will engage in a thorough re–examination of the record in reviewing the Secretary's final decision. *Lewis v. Weinberger*, 515 F.2d 584, 587 (5th Cir. 1975); *Williams v. Finch*, 440 F.2d 613, 615 (5th Cir. 1971); *Sayers v. Gardner*, 380 F.2d 940, 942–43 (6th Cir. 1967).

 Judicial review of the Secretary's decision addresses three questions: (1) Whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues. *Strickland v. Harris*, 615 F.2d 1103, 1108 (5th Cir. 1980); *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964). With respect to the second question–the quantum of evidence–the reviewing Court must look at the record as a whole and take into consideration (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by his wife and others who have observed him; and (4) the claimant's age, education, and work history. *Johnson v. Harris*, 612 F.2d 993, 997 (5th Cir. 1980); *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972); *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir. 1978); *Vitek v. Finch*, 438 F.2d 1157, 1159–60 (4th Cir. 1971).

### B. Disposition: Affirm, Remand, or Reverse

 When the decision of the Secretary is supported by substantial evidence, of course, the reviewing court will affirm. *O'Bryan v. Weinberger*, 511 F.2d 68 (6th Cir. 1975). The Courts have found a number of different reasons to justify a remand for a new hearing before an ALJ. For example, the evidence may be equivocal, or contradictory, and not sufficient to meet the substantial evidence test. *Lewis v. Weinberger*, 515 F.2d 584 (5th Cir. 1975); *Jackson v. Richardson*, 449 F.2d 1326 (5th Cir. 1971). Similarly, the court may remand for the purpose of taking specific testimony which was absent from the record. See e. g. *Johnson v. Harris*, 612 F.2d 993 (5th Cir. 1980) (additional questioning of the vocational expert, and a finding needed on the adequacy of two doctors' examinations of the claimant); *Brenem v. Harris*, 621 F.2d 688 (5th Cir., 1980) (further questioning of vocational expert). A remand is appropriate if the ALJ applied erroneous principles in making his findings, *McGill v. Harris*, 615 F.2d 365 (5th Cir. 1980), or if new evidence has become available after the Secretary's decision was rendered. *Parks v. Harris*, 614 F.2d 83 (5th Cir. 1980); *Mann v. Gardner*, 380 F.2d 182 (5th Cir. 1967). When the credibility of a witness is central to the determination, the case will be remanded. *Garcia v. Califano*, 463 F.Supp. 1098, 1103–1104 (N.D.Ill.1979). If the ALJ failed to consider the combined effect of numerous impairments, *Lewis v. Califano*, 574 F.2d 452 (8th Cir. 1978), or failed to explicitly indicate that all relevant evidence was weighed *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979) the case will be remanded. A remand is warranted if the medical records on which the findings are based defy comprehension because of their illegibility. *Cutler v. Weinberger*, 516 F.2d 1282 (2d Cir. 1975). The failure of the ALJ to properly allocate the burden of proof, and to make findings of fact which reflect the proper burden of proof will also result in a remand. *Cox v. Secretary of H. E. W.*, 465 F.Supp. 1195 (E.D.Mich.1979).[5]

---

5. The claimant bears the ultimate burden of proving his disability. This is true whether the case involves an initial application for disability benefits or an appeal of the Secretary's decision to terminate benefits, i. e., a cessation case. *McCarty v. Richardson*, 459 F.2d 3 (5th Cir. 1972). Once the claimant establishes that he is incapable of performing his previous

A reviewing Court will reverse [6] the decision of the Secretary in more limited circumstances.

■■ Where the record has been adequately developed, and the decision of the Secretary is "clearly erroneous," a reviewing Court will reverse the administrative decision. *White v. Califano,* 464 F.Supp. 696 (W.D.N.C.1979). If proof of the plaintiff's disability is "overwhelming", a reversal is proper. *Hill v. Califano,* 454 F.Supp. 74 (E.D.Tenn.1977). If "proof of appellant's disability was strong, and the evidence to the contrary was lacking in substance" the court will reverse. *Sayers v. Gardner,* 380 F.2d 940, 955 (6th Cir. 1967); *Cooke v. Celebrezze,* 365 F.2d 425 (4th Cir. 1966). Finally, numerous courts have held that when the Secretary's decision is not supported by substantial evidence, it will be reversed. *Goodley v. Harris,* 608 F.2d 234 (5th Cir. 1979); *Colwell v. Gardner,* 386 F.2d 56 (6th Cir. 1967); *Vitek v. Finch,* 438 F.2d 1157 (4th Cir. 1971); *Atkins v. Califano,* 446 F.Supp. 1017 (N.D.Ill.1978).

Thus, in reviewing the record of Mr. Fields' efforts to retain his disability benefits the Court must first decide whether the Secretary's decision is supported by substantial evidence; second, whether additional findings are required or erroneous legal principles were applied and, if not, whether the record, as it now stands, contains substantial evidence that the plaintiff is unable to engage in substantial gainful activity.

### C. The Evidence Reviewed

1. The Doctors' conclusions of disability.

On January 26, 1979, Dr. Johnson concluded that Mr. Fields was totally and permanently disabled. On March 30, 1979, Dr. Walker concluded that Mr. Fields was totally and permanently disabled. On July 10, 1979, Dr. Pilcher concluded that Mr. Fields was totally disabled.

■■ It is axiomatic in these cases that such medical conclusions are not dispositive. *Flowers v. Harris,* 616 F.2d 776 (5th Cir. 1980). Yet, no court has indicated that they are to be ignored. The Secretary's regulations direct the fact finder to consider these conclusions in light of the clinical findings and other evidence. 20 C.F.R. § 404.1526 (1980). The courts have given sustenance to these conclusions as indication of the severity of the claimant's impairments. *Atkins v. Califano,* 446 F.Supp. 1017 (N.D.Ill. 1978); *Hall v. Celebrezze,* 314 F.2d 686 (6th Cir. 1963). In the Fourth Circuit, these conclusions are given "great weight" as reflections of "an expert judgment based on a continuing observation". *Vitek v. Finch,* 438 F.2d 1157, 1160 (4th Cir. 1971). The Second, Sixth and Seventh Circuits have held that the Secretary is bound by a treating physician's opinion where this opinion is not contradicted by substantial evidence to the contrary. *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir. 1978); *Branham v. Gardner,* 383 F.2d 614, 634 (6th Cir. 1967); *Hassler v. Weinberger,* 502 F.2d 172, 178 (7th Cir. 1974). The Fifth Circuit has held that such expert opinions cannot be ignored by the Secretary, *Goodley v. Harris,* 608 F.2d 234, 236 (5th Cir. 1979), and has remanded the cases in which the conclusions of the doctors are uncontradicted. *Flowers v. Harris,* 616 F.2d 776 (5th Cir. 1980); *Good-*

---

work, the burden shifts to the Secretary to prove that there is some other type of substantial gainful activity that the claimant can perform. *Fortenberry v. Harris,* 612 F.2d 947, 950 (5th Cir. 1980). In reviewing an adverse decision of the Secretary, if the court determines that the claimant sustained his burden, but the Secretary failed to sustain her burden, (as, for example, when the evidence is ambiguous or contradictory) the court will not necessarily reverse the decision. The case may be remanded for a new hearing–in essence giving the Secretary a second opportunity to sustain her burden.

**6.** The term "reversal" is technically inaccurate since even in those cases in which the reviewing court awards benefits without a new administrative hearing, the case is remanded for a determination of the amount of benefits due, and for a calculation of attorney's fees when appropriate. As used in this opinion, the term "reversal" in contrast to "remand" means that the reviewing court holds that the claimant is entitled to benefits, and no further hearings are necessary on this issue.

*ley v. Harris,* 608 F.2d 234 (5th Cir. 1979); *Mims v. Califano,* 581 F.2d 1211 (5th Cir. 1978); *Payne v. Weinberger,* 480 F.2d 1006 (5th Cir. 1973); *Williams v. Finch,* 440 F.2d 613 (5th Cir. 1971).

■ This Court finds that the conclusions of these doctors, based as they are on extensive examinations, suffice to sustain the claimant's ultimate burden of proving his inability to engage in substantial gainful activity. Although the other doctors whose reports are in the record—Doctors Moody, Stovall, and Pearson—did not explicitly arrive at the same conclusion, they in no way intimated that the claimant was capable of working. Rather, their reports reflect their futile attempts to diagnose the *cause* of the claimant's impairments. This failure on their part cannot redound to the claimant's detriment. *Colwell v. Gardner,* 386 F.2d 56, 73 (6th Cir. 1967).

■ The psychologist, Dr. Hark, recommended that the claimant continue his consultations with the Vocation Rehabilitation counselor. The same type of evidence was presented to the Court in *Lewis v. Weinberger,* 515 F.2d 584, 587 & n. 3 (5th Cir. 1975). There, the Court recognized:

> [T]hese recommendations appear to be suggestions that [the claimant] try to work, as one doctor put it, "so that he can gradually regain his self–confidence," rather than formal medical opinions affirming appellant's physical ability to hold down gainful employment ... [and] are of dubious value as expressions of opinion on appellant's physical capacity for continuing full time or part time work.

Additionally, Dr. Hark's report began with an acknowledgement that the plaintiff was working with the vocational rehabilitation counselor to the end of setting up a chicken operation on his farm which would be semi–automated. If this was the type of work which the psychiatrist envisioned for Mr.

Fields, it would not constitute any evidence of the ability to engage in substantial gainful activity.[7]

■ Finally, the psychiatrist did not suggest that the claimant was capable of working, but rather, that he should continue his counseling. This amounts to evidence that further rehabilitation of the claimant is necessary before he can return to work. It does not support the Secretary's decision.

### 2. Impairments with no Clinical Explanation

There is overwhelming evidence in the record to support the claimant's allegations of recurrent dizziness, loss of consciousness, and depression. In cases involving subjective feelings of pain, disability benefits can be awarded "even where its existence is unsupported by objective medical evidence." *Simmons v. Harris,* 602 F.2d 1233, 1236 (5th Cir. 1979); *Prewitt v. Gardner,* 389 F.2d 993 (5th Cir. 1968). Although the ALJ implied that the episodes occurred less frequently than the claimant alleged ("[H]e related to Dr. Jan [sic] Pearson that he has had only brief spells where he loses his train of thought and if standing he loses his balance. ... His attacks were described as occurring only occasionally to Dr. Walker"), the ALJ relied more heavily on the reports of Doctors Stovall and Moody which failed to diagnose any significant *hearing* impairment.

In fact, Dr. Pearson's report indicates that the claimant has these attacks five to ten times every day, and that he drops whatever he is holding, is nauseated, and has memory loss. Dr. Walker's report[8] was primarily concerned with the leg, arm and neck impairments. The reference to "occasional attacks" also noted that they were sufficient to cause falling.

■ The evidence is uncontradicted, then, that the claimant does have frequent

---

7. At the hearing, Mrs. Morgan, a vocational expert, testified that such an operation would need an initial capital outlay of $60,000, and that efforts to raise this capital had proved fruitless.

8. The ALJ incorrectly labelled this exhibit 38. The report is labelled exhibit 24, on page 175–76 in the record.

recurring attacks of dizziness. But like numerous cases involving pain, the physicians have failed to detect the cause. It is this failure which led the ALJ to conclude that the dizziness was not disabling. This conclusion is erroneous. The recurrent episodes of dizziness, vertigo, nausea, and self-imposed exile—evidence of which was uncontradicted, and in fact corroborated by Mrs. Morgan, the claimant's wife, and at least four doctors—can form the basis of a finding of disability without underlying medical or clinical data. The burden on the claimant—a burden which has aptly been described as "bordering on the unrealistic," *Williams v. Finch*, 440 F.2d 613, 615 (5th Cir. 1971)—is to prove that he is disabled. The claimant does not have the onus of producing evidence which explains the biochemical malfunction which causes his disability.

> While a claimant must show that the physical or mental impairment by reason of which he claims to be disabled "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques," 42 U.S.C. § 423(d)(3), this does not mean that medical opinion must necessarily be supported by "objective" clinical or laboratory findings.

*Cutler v. Weinberger*, 516 F.2d 1282, 1286–87 (2d Cir. 1975); *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3rd Cir. 1971).

An individual who has dizzy spells accompanied by nausea 5–10 times every day which causes him to fall down or drop whatever he is holding; with at most 50% use of his right arm; with no ability to perform gross or fine manipulations with his right hand; with pain in his legs, back, and neck; with a hearing impairment; and with high levels of depression and anxiety—such an individual is not capable of engaging in substantial gainful activity. Although the Social Security Act is not an unemployment compensation act, and thus the availability of jobs is not a part of this court's inquiry, this does not mean that the question of disability is to be answered in a vacuum. To some extent, the impairments of the claimant must be viewed through the eyes of a prospective employer. "If the hiring practices and policies of employers will not permit the employment of a man, who because of an impairment could not 'carry his load', then he must be considered disabled." *Gardner v. Smith*, 368 F.2d 77, 85 (5th Cir. 1966); *Sayers v. Gardner*, 380 F.2d 940 (6th Cir. 1967); *Thomas v. Celebrezze*, 331 F.2d 541, 546 (4th Cir. 1964).

### 3. The Vocational Experts

The ALJ did not even mention the testimony of Mrs. Irene Morgan, a vocational rehabilitation counselor who had worked with the plaintiff for over a year prior to the hearing. The Appeals Council failed to find any significance in the report of Donald Anderson, a vocational rehabilitation counselor who had also worked with the plaintiff for a year.[9] Although the testimony of such experts is not of talismanic importance, it is not to be simply disregarded. Their testimony (and their qualifications) were outlined in the beginning of this opinion. Both concluded, independently, that the claimant was incapable of engaging in any substantial gainful activity. Vocational experts usually testify at a hearing after reading the record and listening to the claimant's testimony. Mrs. Morgan and Mr. Anderson had the opportunity to work with the plaintiff for over a year in addition to having had access to the medical reports. Their opinions are entitled to significantly more weight in light of their personal knowledge of the plaintiff's daily life, and the effects of his various impairments on his residual functional capacity.

A vocational expert's testimony at a hearing generally takes the form of answers to hypothetical questions posed by the ALJ. Although that was not done with either of these experts, their testimony is in no way tarnished. The findings of the

---

9. Any question as to the admissibility of such a report was resolved in *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1970).

judge with respect to the plaintiff's physical impairments, i. e., 50% use of right arm, some dizziness and depression, were the impairments upon which the experts predicated their vocational evaluations.

#### 4. The "grid system"

There is substantial evidence in the record that the claimant is unable to engage in any substantial gainful activity. Because of the ALJ's reliance on the "grid system" to reach his contrary conclusion, a few remarks about that Regulation are in order.

Appendix 2 of Subpart P is invoked when a claimant's medical impairments alone do not meet the "listings" in Appendix 1, so that various vocational factors become relevant in determining the claimant's ability to engage in substantial gainful activity. When the findings of fact concerning age, education, work experience (and transferability of skills), and residual functional capacity coincide with a specific Rule, then a finding of disabled or not disabled is directed. *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980); *Hicks v. Califano*, 600 F.2d 1048, 1050 (4th Cir. 1979).

Although this calculus appears to be routine, its exceptions and qualifications are quite intricate. For example, these Rules do not include any consideration of non–exertional impairments. Appendix 2 Sec. 200.00(e). Nor do they specifically address the problem of limited manipulative impairments. *Id.* Furthermore, the initial finding of residual capacity (i. e., maximum sustained work capability limited to sedentary, light or medium work) does not allow for a finding that only a limited range of, for example, sedentary work, is possible.

Each of these qualifications to the Rules applies to Mr. Fields. His dizziness and depression is a non–exertional limitation; his arm and hand impairment limits his manipulative ability, and also limits the range of sedentary work which he can perform. Rule 201.00(h) provides an example which illustrates how the Table should be utilized under similar circumstances:

However, a finding of disabled is not precluded for those individuals under age 45 who do not meet all of the criteria of a specific rule and who do not have the ability to perform a full range of sedentary work. The following examples are illustrative: Example 1: An individual under age 45 with a high school education can no longer do past work and is restricted to unskilled sedentary jobs because of a severe medically determinable cardiovascular impairment (which does not meet or equal the listings in Appendix 1). A permanent injury of the right hand limits the individual to sedentary jobs which do not require bilateral manual dexterity. None of the rules in Appendix 2 are applicable to this particular set of facts, because this individual cannot perform the full range of work defined as sedentary. Since the inability to perform jobs requiring bilateral manual dexterity significantly compromises the only range of work for which the individual is otherwise qualified (i. e., sedentary), a finding of disabled would be appropriate.

20 C.F.R. § 404.1513 Appendix 2, Rule 201.-00(h).

■ The ALJ's blind reliance on Rule 201.26–(a) maximum sustained work capability limited to sedentary work; (b) age: 18–44; (c) education: limited or less; (d) work experience: skilled or unskilled, skills transferable–was in error.

■ Because this Court decides that the initial finding of the ALJ was not supported by substantial evidence, there is no need to remand this case because of the error in applying Appendix 2. The claimant has sustained his burden of establishing that he is unable to engage in even sedentary work.

ACCORDINGLY, the decision of the Secretary is REVERSED, and the case is REMANDED with instructions to award the plaintiff the insurance benefits for which he has established his eligibility, and for a determination of appropriate attorney's fees.