Nadine MITCHELL, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.

No. 82-0238-CV-W-1.

United States District Court, W.D. Missouri, W.D.

Dec. 7, 1982.

James R. Brown, Kansas City, Mo., for plaintiff.

Robert G. Ulrich, U.S. Atty., Judith M. Strong, Asst. U.S. Atty., Kansas City, Mo., for defendant.

MEMORANDUM OPINION AND ORDER

JOHN W. OLIVER, Senior District Judge.

I.

In this proceeding under Title II of the Social Security Act, as amended, 42 U.S.C. § 401 *et seq.*, plaintiff has petitioned this Court to review the final decision of the Secretary of Health and Human Services denying her entitlement to social security disability benefits. Jurisdiction of this

Court is pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), and the case pends on cross motions for summary judgment. For the reasons stated below, the decision of the ALJ will be reversed and the case will be remanded for proceedings consistent with this opinion.

## II.

On September 15, 1980, plaintiff filed her application (Tr. 55–58) to establish a period of disability, as provided in 42 U.S.C. § 416(i) and to obtain disability insurance benefits, as provided in 42 U.S.C. § 423. The application received consideration and reconsideration by the Social Security Administration (Tr. 61–64, 76) and the claim was denied.

On July 9, 1981, at plaintiff's request, a hearing was held, at which plaintiff and a vocational expert testified (Tr. 27–54). Plaintiff was represented by counsel at the hearing. On September 30, 1981, the administrative law judge (ALJ) rendered a decision unfavorable to plaintiff, finding that plaintiff was not under a disability as defined in the Social Security Act, as amended (Tr. 9–18). On February 2, 1982, the Appeals Council of the Social Security Administration affirmed the decision of the ALJ (Tr. 3–4). The parties are agreed that the decision of the ALJ stands as the final decision of the Secretary.

The plaintiff, a female, was born on February 21, 1940, is five feet tall and weighs 190 pounds. She had worked primarily as a key punch operator for the last 17 years, and had been with Yellow Freight Company from 1968 to 1980. At that job she performed the regular key punch operator job and also did some supervision. Plaintiff claims that she is no longer able to work because of hand and back problems. She was involved in an automobile accident in 1977 and has since complained of having pain and stiffness in her neck, shoulders, and lower back (Tr. 40–41). In 1979 plaintiff encountered numbness and tingling in both hands. This was diagnosed as carpal tunnel syndrome (Tr. 89) and in November,

1979 bilateral carpal tunnel release surgery was performed. Plaintiff testified that, even after this surgery, she could not type or write very well because her hands are weak and become numb (Tr. 48–49). She further testified that the pain in her back is severe when she sits or stands in one place for longer than a half hour to an hour (Tr. 45–47). The claimant testified that because of these problems she can no longer work and has been declared disabled by her pension plan at work (Tr. 34).

## III.

An individual claiming disability benefits has the burden of showing that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Once a claimant has established that a disability precludes her from performing her former work, the burden shifts to the Secretary to prove that there is some other type of substantial gainful activity that the claimant can perform. *Tucker v. Schweiker,* 689 F.2d 777, 779 (8th Cir.1982); *Martin v. Harris,* 666 F.2d 1153, 1155 (8th Cir.1981).

In the present case, the ALJ made the following findings:

1. That the claimant filed an application for a period of disability and for disability insurance benefits on September 15, 1980, alleging disability from November 7, 1979. That the claimant is not engaging in substantial gainful activity as defined in 20 CFR # 404.-1573–1575.

2. That the claimant met the special earnings requirement of the Social Security Act, as amended, on November 7, 1979, the date of alleged "disability," and continues to meet them through the date of this decision.

3. That the claimant was born on February 21, 1940 in the State of Kansas and has been administratively classified under the provisions of 20 CFR

# 404.1563(b) as a younger person, has a twelfth grade education and on that account has been administratively classified under 20 CFR # 404.1564(b)(4) as a person with a high school education and above.

4. That the medical evidence establishes that the claimant suffers from obesity, carpal tunnel syndrome, recurrent lumbo-sacral sprain, possible lumbo-sacral instability, possible herniated lumbar disc, but her allegation of constant, severe and unabated pain is not credible and such impairments do not restrict her physical ability to perform her past sedentary work in a significant way, neither singly nor in combination under the provisions of 20 CFR # 404.1521, nor the listings prescribed in 20 CFR # 404.1569.

5. That the claimant was not prevented from engaging in any substantial gainful activity for any continuous period beginning on or before the date of this decision, which has lasted or could be expected to last for at least twelve months.

6. That the claimant was therefore not under a "disability," as defined in the Social Security Act, as amended, at any time on or prior to the date of this decision.

As these findings indicate, the ALJ determined that the plaintiff was able to perform her past relevant work and thus failed to make a prima facie case. After reviewing the record, however, we conclude that the plaintiff did indeed make a prima facie case and that the Secretary was therefore required to prove that there was some other type of work in the national economy that plaintiff could perform. Since the record is incomplete with respect to this question, we will remand for further proceedings to determine whether plaintiff can perform other jobs that exist in the national economy.

■ It is imperative that an ALJ strictly adhere to the "orderly and uniform framework for analysis and decision of disability claims" which fixes the sequence of decision-making that ALJs are required to follow. *McCoy v. Schweiker,* 683 F.2d 1138, 1141 (8th Cir.1982). In order to determine whether a claimant can perform past work, the ALJ is required to review the claimant's residual functional capacity (RFC) and the physical and mental demands of the work claimant did in the past. If the ALJ then determines that the claimant can still do this type of work, a finding of not disabled is warranted. 20 C.F.R. § 404.1520(e). This requires a careful evaluation of the functions performed on the past job and a determination of whether the claimant can still perform the necessary functions in a significant way.

■ If the ALJ determines that the claimant cannot perform relevant past work, the ALJ must then move on to the next step which is to determine whether the claimant's impairment prevents her from performing any other work. At that point it is necessary to consider the claimant's RFC, age, education, and past work experience to determine if the claimant can perform any other work in the national economy. 20 C.F.R. § 404.1520(f). It is not necessary to consider this step unless the ALJ determines that the claimant cannot return to her past employment.

■ In the present case, the decision by the ALJ was deficient in two important respects. First, the ALJ did not follow an orderly analysis in reaching his decision as required by the rules. The ALJ states that there are "many jobs in the sedentary field which the claimant could enter" and then states that one such sedentary job is "her past work as a supervisor in the key punch operation." (Tr. 16.) The ALJ is here discussing two steps at once: (1) whether plaintiff could return to her past work; and (2) whether plaintiff could perform any other job in the national economy. It is, however, not necessary to discuss other jobs in the national economy unless the ALJ determines that the plaintiff cannot return to her past employment. Such analysis is confusing and may lead to erroneous results based on irrelevant factors. It is important for the ALJ to follow the orderly frame-

work set out in the Guidelines to ensure uniformity and regularity in outcome as well as fairness to the claimant.

■ Second, and more importantly, the ALJ's finding that plaintiff is able to perform her past sedentary work is not supported by the record. In determining whether plaintiff could perform past relevant work, the ALJ placed great emphasis on the fact that, from 1964 to 1966, the plaintiff had a "key punch supervisor" job. But the ALJ failed to evaluate the requirements of this job in view of the functions plaintiff could still perform. Plaintiff testified that the key punch supervisor job was not just supervisory, but that she would still be required to key punch about 50% of the time (Tr. 37, 72). Plaintiff also testified that she was no longer able to key punch or type because of her carpal tunnel syndrome and that her treating physician, Dr. Thorn, told her that she could not return to that type of work (Tr. 49). Thus, she could not, according to her testimony, return to her job as "key punch supervisor."

This testimony that she could no longer key punch, a function necessary in her past relevant work, is supported by the medical evidence. On July 6, 1981, her treating physician, Dr. Thorn, stated in a letter that plaintiff has been "unable to return to work due to the fact that she has persistent pain and discomfort distal to the wrist" (Tr. 131). Because of this problem with her hands and continued back problems, Dr. Thorn stated that the "chance of this patient returning to work are (sic) very slim" (Tr. 132).

At the request of the Secretary, plaintiff was also examined by Dr. McFarland (Tr. 113). After examining the plaintiff, Dr. McFarland noted that dysesthesias and paresthesias of the hands following carpal tunnel release surgery is fairly common and does keep individuals from being able to use their hands in a normal employable fashion and stated that "it is apparent that with her hands being very weak and uncomfortable, plus being overweight and a history of low back discomfort, that she is significantly disabled" (Tr. 110).

Two other doctors commented on plaintiff's condition. Dr. Horwitz submitted a Missouri State Agency medical consultant's case analysis. After consulting plaintiff's file, Dr. Horwitz reported that "[i]t is the impression of this consultant that the claimant has a moderate impairment, which would make it difficult for her to use her hands for fine motor activity and for lifting and moving objects weighing probably more than 10 pounds" (Tr. 116). Dr. Needels, another doctor who did not examine plaintiff but examined her records, submitted a residual functional capacity report stating that plaintiff's hands were restricted as far as fine manipulation due to carpal tunnel syndrome (Tr. 121).

Every doctor considered plaintiff's hand problems and none of them contradicted her testimony that her hands are severely disabled and that she can no longer perform the type of fine manipulation required in key punching. In fact, all of the medical evidence supports plaintiff's claim that she can no longer key punch. This includes the report of Dr. McFarland, a physician chosen by the Secretary to examine plaintiff, as well as the reports of Dr. Horwitz and Dr. Needels, medical consultants to the Secretary. Having established that she could no longer key punch and that her past relevant work involved key punching, the plaintiff made out a prima facie case. The burden then shifted to the Secretary to establish that plaintiff can perform some other job in the national economy. The Secretary will be given an opportunity to meet this burden with substantial evidence on remand.

## IV.

Since we conclude that the plaintiff has a severe impairment that prevents return to her past relevant work, the only issue remaining on remand is whether plaintiff can nevertheless do other jobs that exist in the national economy. *McCoy v. Schweiker, supra,* 1142. In view of the present record, however, we find it necessary to give the following instructions on remand: (1) the use of the Tables in Appendix 2 to Part 404 would not be appropriate; (2) absent sub-

stantial evidence from other sources, a vocational expert must be called to address the question of what jobs plaintiff can perform in the national economy; (3) plaintiff's complaints of pain must be seriously considered by the ALJ and the record must be fully developed on the issue of plaintiff's back condition; and (4) the reports of the examining physicians should be considered and given more weight than the RFC checklists prepared by physicians who have not examined the plaintiff.

### A. *Use of the Tables*

■ To determine the remaining issue, the ALJ must assess plaintiff's RFC by examining all of the medical evidence including plaintiff's testimony. 20 C.F.R. § 404.1545(a). The ALJ must then also consider vocational factors of age, education, and work experience. 42 U.S.C. § 423(d)(2)(A). In some cases it is possible to then use the Tables or "grids" set out in Appendix 2 of 20 C.F.R. Part 404, but under the facts of this case we conclude that use of the grids is not proper. Basically, a conclusion of disabled or not disabled is not directed by the grids if "a claimant's relevant characteristics differ in any material respect from those of the grid." *McCoy v. Schweiker, supra,* 1146.

Section 200.00(e) of the Guidelines to Appendix 2 states:

Since the rules are predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs, they may not be fully applicable where the nature of an individual's impairment does not result in such limitations, e.g., certain mental, sensory, or skin impairments. In addition, some impairments may result solely in postural and manipulative limitations or environmental restrictions.

Also, in Section 201.00(h), an example is given illustrating that the grids are not always to be considered binding:

Example 1: An individual under age 45 with a high school education can no longer do past work and is restricted to unskilled sedentary jobs because of a severe medically determinable cardiovascular

impairment (which does not meet or equal the listings in Appendix 1). A permanent injury of the right hand limits the individual to sedentary jobs which do not require bilateral manual dexterity. None of the rules in Appendix 2 are applicable to this particular set of facts, because this individual cannot perform the full range of work defined as sedentary. Since the inability to perform jobs requiring bilateral manual dexterity significantly compromises the only range of work for which the individual is otherwise qualified (i.e., sedentary), a finding of disabled would be appropriate.

■ We conclude that the plaintiff's impairments include a severe manipulative limitation in that plaintiff is unable to use her hands for fine manipulation due to the effects of carpal tunnel syndrome. The rules set out in Appendix 2 pertain to the strength requirements of jobs and by their terms are thus not applicable in this case where the plaintiff's restrictions are not wholly related to strength.

### B. *Vocational Expert*

■ Thus, under the circumstances of this case, the grids "cannot take the place of vocational expert testimony addressed to the question of what jobs" plaintiff can perform. *Tucker v. Schweiker, supra,* 780. Further, a vocational expert must be called if there is not substantial evidence from other sources bearing directly on the issue of "substantial gainful activity." *McCoy v. Schweiker, supra,* 1149; *Garrett v. Richardson,* 471 F.2d 598, 603–04 (8th Cir.1972).

■ At the oral hearing in this case, a vocational expert testified in response to a hypothetical question posed by the ALJ. In his decision, however, the ALJ discredited the testimony of this expert stating that:

Although the vocational expert testified that there were no jobs which the claimant could perform, this conclusion was in response to a hypothetical question that the claimant was unable to return to any of her prior jobs because of the severity of her impairments. Since

the Administrative Law Judge is now persuaded that the claimant's impairments are not as severe as indicated in the hypothetical, the vocational expert's conclusion is not binding on the undersigned Administrative Law Judge.

We note that, on remand, the burden is on the Secretary to prove with substantial evidence that there is some job that plaintiff can perform. A vocational expert can be extremely useful to ascertain whether plaintiff is disabled. But calling a vocational expert and asking a hypothetical question that is later discredited is not much better than not calling a vocational expert at all. The purpose of this expert testimony is to gather information from trained sources concerning the prospects of this plaintiff and to do this requires more than one vague hypothetical question. Hypothetical questions posed to vocational experts "should precisely set out the claimant's particular physical and mental impairments." *Tennant v. Schweiker*, 682 F.2d 707, 711 (8th Cir.1982). The questions posed to the expert should be carefully worded and specific to this plaintiff. This is necessary because the "ALJ must fully and fairly develop the record so that a just determination of disability may be made." *McCoy v. Schweiker, supra*, 1147.

## C. Pain and Development of the Record

■ On remand, the ALJ must also sufficiently consider plaintiff's claim that she experiences severe pain. Plaintiff testified that she experienced pain when she stood or sat too long, and that sometimes she had to lie down to obtain relief (Tr. 46–47). "Although evidence of pain suffered by a claimant may be of necessity subjective in nature, and therefore difficult to evaluate, the administrative fact-finder must give serious consideration to such evidence even though it is not fully corroborated by objective examinations and tests performed on the claimant." *Northcutt v. Califano*, 581 F.2d 164, 166 (8th Cir.1978). In the present case, the ALJ merely stated that plaintiff's "allegation of constant, severe, and unabated pain is not credible." (Tr. 17). But the ALJ cannot simply say that the complaints

of pain are not credible, there must be explicit credibility findings with reasons on the record for such findings. *Tucker v. Schweiker, supra*, 781; *Wilson v. Schweiker*, 681 F.2d 526, 527 (8th Cir.1982).

Before the ALJ is able to make explicit credibility findings, it may be necessary for the ALJ to more fully develop the evidence concerning plaintiff's back condition. As stated above, the ALJ has a duty to fairly and fully develop the matters at issue and, in this case, it is apparent that the medical evidence relating to plaintiff's back condition may not have been developed to a sufficient extent. On July 6, 1981, Dr. Thorn diagnosed plaintiff as exhibiting recurrent lumbo-sacral sprain, possible lumbo-sacral instability, and a possible herniated lumbar disc, pending myelogram (Tr. 131). On October 9, 1980, at the request of the Secretary, Dr. Thorn completed a medical questionnaire in which he recommended a lumbar myelogram examination for her back (Tr. 102), but the Secretary failed to develop the record on this issue.

In *Landess v. Weinberger*, 490 F.2d 1187 (8th Cir.1974), a similar situation was presented. In that case, the Secretary requested an orthopedic examination after which the doctor recommended a myelogram as a basis for further study of the claimant's back condition. But the hearing examiner disregarded the recommendation and, based on an incomplete record, found that claimant had not sustained her burden of proof. Claimant appealed and, prior to the Appeals Council order affirming the hearing examiner, the claimant obtained a medical report from her physician stating that "a report from a neurosurgeon, with a myelogram to prove the ruptured disc might give more evidence to the seriousness of her condition." 490 F.2d 1188–89. The district court granted summary judgment for the Secretary but the Court of Appeals reversed holding that the ALJ failed to fairly and fully develop the matters at issue, and the case was therefore remanded to the Secretary for further proceedings.

In the present case, the ALJ decided the issue of pain and back condition based on

sketchy medical reports and an unfulfilled recommendation of a myelogram examination. We realize that a myelogram is a serious and sometimes painful procedure and it may be possible to decide this issue of pain without such an examination. But if a myelogram is not done, the other medical evidence must be sufficiently clear and substantial to make a fair determination as to whether the claimant is disabled or not. The ALJ "is in the peculiar position of acting as an adjudicator while also being charged with developing the facts." *Landess v. Weinberger, supra,* 1189. To adjudicate the issue of plaintiff's pain, a complete record is essential. Without a full and fair record it is impossible for the ALJ to evaluate this issue and make explicit findings.

### D. *Physicians Reports*

Finally, the ALJ, in his evaluation of the evidence, places undue emphasis on the report of Dr. Needels, the physician who submitted a residual functional capacity checklist based on a review of plaintiff's case file. Dr. Needels did not examine plaintiff, he merely reviewed the case file of plaintiff and made estimates of plaintiff's RFC on a standardized checklist. Such a report is of limited value, especially when compared to the evaluations of doctors who have actually examined plaintiff. Such reports by the examining physicians should be given more, not less, weight by the ALJ. *McCoy v. Schweiker, supra,* 1147 n. 8; *Ragsdale v. Secretary of Dept. of Health, Educ. and Welfare,* 623 F.2d 528, 530 (8th Cir.1980). And, in fact, as a general rule, these checklists are entitled to little weight in the evaluation of disability. *Gilliam v. Califano,* 620 F.2d 691, 693 (8th Cir.1980).

### V.

For the reasons stated, it is

ORDERED (1) that the decision of the Secretary that the plaintiff is able to perform her past relevant work and is therefore not disabled is reversed. It is further

ORDERED (2) that this case should be and is hereby remanded to the Secretary for proceedings consistent with this opinion to determine whether plaintiff can perform any other job in the national economy.