Julia A. CIMADOR, Plaintiff,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.

Civ. A. No. 83–886.

United States District Court, W.D. Pennsylvania.

Oct. 7, 1986.

Donald E. Doerr, Butler, Pa., for plaintiff.

J. Alan Johnson, U.S. Atty., Pittsburgh, Pa., for defendant.

## MEMORANDUM

ROSENBERG, District Judge.

This matter is before me for disposition of a motion for counsel fees submitted by counsel for the plaintiff for his representation of the plaintiff in his successful quest for Social Security benefits.

■ A court may award compensation only for time actually devoted to prosecuting the matter in the judicial branch and not for administrative time. *Guido v. Schweiker*, 775 F.2d 107, C.A.3, 1985.

■ Therefore, I consider only the time allegedly devoted by counsel to prosecuting the action in both this court and the Court of Appeals. Counsel elected to bill in minimum time segments of thirty minutes, except for the completion of one form. As a matter of law, I find this is unreasonable. See: *City of Riverside v. Rivera*, —— U.S. —— 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). While counsel may have elected to employ this time frame, I find his assertion incredible that it took a half-hour to read a motion for enlargement of time, and an hour to read a briefing schedule. Similar expanded billings of time are demonstrated throughout counsel's fee application. In awarding fees I have adjusted those times to more reasonable fifteen minute segments.

■ Perhaps the most flagrant example of unreasonable billing is the claim by counsel for 25 hours spent allegedly in preparation of his brief to the Court of Appeals. This brief is *identical* in all respects with the brief submitted to the District Court (for which he claimed 10 hours), except for the jurisdictional statement required for the appellate brief. To have attempted to charge another 10 hours for a brief already submitted would have amounted to double billing but to charge 25 extra hours for this document is fee exploitation at its worst by a member of this Bar.

The district court brief and the identical appellate brief[1] each contain eight numbered pages, and two additional pages consisting of a table of contents and a table of authorities. Each brief cites only two cases and two statutes, and contains three pages of quoted transcript. I find that the preparation of this brief by a practitioner who claims expertise in this area of law should have taken less than 8 hours to prepare. I find that the attachment of a jurisdictional statement to the Court of Appeals brief and sending two copies of the brief to the United States Attorney, would be lavishly billed at one hour additional time, only. The twenty-four phantom hours must be stricken as plain profiteering.

It is customary for an attorney to use a common vehicle, theory, method, pleadings or briefs in pursuing his professionalism and he should be paid for each time he utilizes it—but in separate unconnected cases. When it is only a matter of repetition for the same client, it is only one single effort and compensable as one single effort. When counsel has used a brief in a district court for a client and re-used it verbatim in the Court of Appeals for the same client, that client had, since he had already paid for it, been entitled to its re-use and only liable for additions required in the second utilization.

It is obvious that the only change or addition here was attached to the brief, consisting of a jurisdiction statement required by the Court of Appeals, and that 2 copies had been sent to the United States Attorney. Its preparation, the jurisdictional statement and the sending of the 2 copies of the brief to the United States Attorney is for what counsel should be entitled to compensation. Its use again and the charge of *twenty-five hours* which counsel did not expend when he says he did, puts this claim of twenty-five hours in the category of perpetration of deception.

I said in *Jim Gregris et al. v. Sanford Edberg, individually*, 645 F.Supp. 1153, (W.D.Pa.1986), at pages 1160 and 1161:

"LaFontaine is credited with the statement that 'Help yourself, and heaven will help you'. It should not appear so from an overabundance of aid by the court to the enhancement of attorneys' fees. Presently, an applicable quotation for attorneys might be 'Help yourself and the courts will help you'. For, if we, the courts, do not concern ourselves with the interests of ordinary people and instead stand as an advocate for the enhancement of attorney's fees, it will prove that ordinary people will be left without counsel, or at the mercy of counsel and be compelled to become their own advocates. We should, in evaluating the liberal principle that attorneys are entitled to fees, be alert to, and restrict where possible, over-evaluation, self-love and self-enrichment through the aid of the courts. In the end, when it is through governmental channels, it is the public who must ultimately pay the bill.

In our experience in allowing attorneys' fees, we seldom see attorneys underrate themselves and very seldom see attorneys underrate the value of their services, but the vast majority overrate themselves and require careful examination for the purpose of making payment truly for the services necessarily and well rendered."

And at page 1161, I said,

"That Congress and the courts have graciously seen fit to aid justice by authorizing courts to impose the unjust costs of a disfavored litigant upon him and reimburse the successful litigant should evoke a spirit of cooperation in all lawyers in order to convince the public that the legal profession consists of truly honorable and trustworthy servants upon whom it relies.

The complaints against lawyers' demands for fees in thousands of dollars

1. Copies of both briefs, district court and appellate, are attached hereto as Exhibits A and B, respectively.

strikes resentment in many people and eliminates legal help for those who are not eligible for legal aid and not necessarily the rich, but ordinary wage earners when they need such legal aid. The legal profession is an honorable profession and it can afford to have a more favorable reputation than it displays."

Recognizing that in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) the Court was considering the award of attorney's fees under 42 U.S.C. § 1988, the rationale utilized there may likewise be employed in this case "the amount of a *reasonable* fee is the number of hours *reasonably* expended on the litigation multiplied by a *reasonable* hourly rate." Id. at 433, 103 S.Ct. at 1939, emphasis added.

The Congress of the United States and the Federal courts have been highly favorable to insure payment of reasonable fees for services reasonably, properly and actually rendered. But when an attorney is ungrateful and cannot appreciate the basis and reasoning upon which attorney's fees ought to be claimed and rendered, it would probably be more a matter of justice if we applied what Judge Dumbauld said in *Brown v. Stackler,* 612 F.2d 1057, C.A.7, 1980, that where a claim for attorney fees is obviously inflated to an intolerable degree, a court may refuse to award any fees whatsoever to the prevailing plaintiff.

■ I shall not be so harsh as to believe that any attorney is not entitled to some fee in spite of his efforts to procure funds at the expense of others. Under these circumstances, I will allow counsel an amount for a reasonable fee as being the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate. *Hensley v. Eckerhart, supra.*

2. I have allowed counsel all of the hours in his petition, except for: the above described briefs (a total of 9 hours allowed instead of the 35 hours claimed), and the time to review the motion on June 27, 1983, and briefing schedule on June 8, 1984.

3. Rule 52. Findings by the Court.

Since counsel, at the most, could have reasonably devoted only 39 and ¼ hours to this litigation,[2] I find him entitled to compensation at a rate ordinarily awarded by this court to an experienced Social Security practioner of $75.00 per hour. I find counsel is entitled to receive fees in the amount of $2,943.00. It will be so ordered.

The Findings of Fact and Conclusions of Law are incorporated in this Memorandum in accordance with Federal Rule of Civil Procedure No. 52.[3]

## ORDER OF COURT

AND NOW, TO-WIT, this 7th day of October 1986, for the reasons set forth in the foregoing Memorandum, IT IS ORDERED that counsel be entitled to receive attorney's fees in the amount of $2,943.00, and that he be paid this amount.

## EXHIBIT A

## CLAIMANT'S BRIEF

### *Statement of Issue*

WHETHER THE ADMINISTRATIVE LAW JUDGE ERRED IN FAILING TO GRANT THE CLAIMANT DISABILITY INSURANCE BENEFITS UPON A FINDING (No. 5) THAT SHE RETAINED THE RESIDUAL FUNCTIONAL CAPACITY TO PERFORM SEDENTARY WORK.

### *Argument*

Following The "Grid" Rule 201.27 of Appendix 2, Subpart P, Social Security Administration Regulations No. 4, the Administrative Law Judge made a finding that Claimant was not disabled on or before December 31, 1953.

The medical testimony is relatively old, almost thirty-three years, but it is clear in Exhibit 9, (Tr. 73 and 74) that Claimant

"(a) Effect. In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially or state separately its conclusions of law thereon ... If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein.

suffered a right sides hemoplegia caused by a cerebral hemorrhage.

The finding of a residual functional capacity totally ignores the unrebutted testimony of the Claimant that she does not have the ability to perform the full range of movements required for sedentary work.

Even in a sedentary job, Claimant suffers from exertional impairments. She cannot lift ten pounds, she cannot carry dockets, files, ledgers and small tools.

"Q. —in lifting, because you're using one hand?

A. Yes." T. 13, R. 32

"Q. Now, what would that weigh?

A. A couple pounds, a pound anyhow.

Q. A pound.

A. A pound, (inaudible).

Q. Uh-huh.

A. In sauce.

Q. Now, what—what would be the maximum—so with your lifting and using your both hands, you say—you'd estimate it'd be at the most a pound?

A. Well, maybe three pounds, a couple pounds of dry clothes in the clothes basket, maybe.

Q. Do you have—do you lift a clothes basket enough to fill a load in your washer?

A. No, I have to divide. I have a string on my clothes basket, and I drag it with a string." T. 17, R. 36

Claimant has in addition to the lifting problem several non-exertional impairments. She lacks the manipulative ability to use both hands. She cannot stoop or bend.

"A. I couldn't get down on the floor and get up by myself.

Q. Uh-huh.
You mean, like in order to say, scrubbing floors?

A. Uh-huh.
Couldn't slide the toaster plug in and get up, I'd be down on the floor and that was it.

Q. You mean, you had an electric toaster plugged down—

A. I had—

Q. —a low plug?

A. Yes.

Q. You couldn't bend—

A. I could get down, but once I got down, I couldn't get back up." T. 14 R. 33

"Q. Do you ever use both hands to pick up anything?

A. No, because I can't. These fingers are, you know, stiff, and I can't pick up anything. I've broken couple times.

Q. Now, you did pick up something once and you ended up in the hospital under Dr. Franko's care?

A. Yes, but that was with my good hand. I moved something or picket something up that was a little heavy, and I ended up with the torn cartilage on the rib side." T. 20 R. 39

"Q. Essentially you're a one-arm person:

A. Now, I am, yes, sir.

Q. Over the years, you have sustained a number of accidents and burns?

A. Right.

Q. More than what you would consider the average then?

A. Yes. Yes, I'm accident prone.

Q. Are you susceptible or are you afraid of your condition?

A. Yes.

Q. Why?

A. Because, I know that I don't have the whole use—I don't have any use of this arm and I don't have enough to support myself on with one arm." T. 21—R. 40.

The Claimant has testified that she is essentially a one-armed person. Her husband Virgil corroborated this on page 23 of the transcript, page 42 of the Record, when he said that Claimant was able to diaper her baby with her left arm and her mouth.

Present case is on "all fours" with Example 1 on page 72 Section 201.00, subsection (h) of Social Security Regulations, Section 404, Appendix 1, Parts A and B.

**(h)** The term "younger individual" is used to denote an individual age 18 through 49. For those within this group who are age 45–49, age is a less positive factor than for those who are age 18–44. Accordingly, for such individuals; (1) who are restricted to sedentary work, (2) who are unskilled or have no transferable skills, (3) who have no relevant past work or who can no longer perform vocationally relevant past work, and (4) who are either illiterate or unable to communicate in the English language, a finding of disabled is warranted. On the other hand, age is a more positive factor for those who are under age 45 and is usually not a significant factor in limiting such an individual's ability to make a vocational adjustment, even an adjustment to unskilled sedentary work, and even where the individual is illiterate or unable to communicate in English. However, a finding of disabled is not precluded for those individuals under age 45 who do not meet all of the criteria of a specific rule and who do not have the ability to perform a full range of sedentary work. The following examples are illustrative: Example 1: An individual under age 45 with a high school education can no longer do past work and is restricted to unskilled sedentary jobs because of a severe medically determinable cardiovascular impairment (which does not meet or equal the listings in Appendix 1). A permanent injury of the right hand limits the individual to sedentary jobs which do not require bilateral manual dexterity. None of the rules in Appendix 2 are applicable to this particular set of facts, because this individual cannot perform the full range of work defined as sedentary. Since the inability to perform jobs requiring bilateral manual dexterity significantly compromises the only range of work for which the individual is otherwise qualified (i.e., sedentary), a finding of disabled would be appropriate.

*Fields v. Harris,* 498 F.Supp. 478 (1980) involved a pipefitter, under age 45, who sustained multiple injuries from a thirty foot fall including the breaking of his right arm. A finding by the Administrative Law Judge that Claimant could engage in sedentary employment was reversed because several non-exertional impairments were found including a lack of manual dexterity with the following:

> "(17, 18) An individual who has dizzy spells accompanied by nausea 5–10 times every day which causes him to fall down or drop whatever he is holding; with at most 50% use of his right arm; *with no ability to perform gross or fine manipulations with his right hand;* with pain in his legs, back and neck; with a hearing impairment; and with high levels of depression and anxiety-such an individual is not capable of engaging in substantial gainful activity.)"

(Underlining ours)

Claimant has testified that she is unable to lift ten pounds and thus has an exertional disability which prevents her from doing even sedentary work. In addition, she has non-exertional disabilities. She cannot use her right arm fully, cannot stoop or bend. In *Mitchell v. Schweiker,* 551 F.Supp. 1084 (1982), a female claimant under age 45 was found by the Court not to be able to do her old key punch operation because of the after effects of a carpal tunnel syndrome remedial operation. Her hands were weak and numb.

The Court approved the above quoted illustration from Sec. 201.00(h) and added:

> "We conclude that the plaintiff's impairments include a severe manipulative limitation in that plaintiff is unable to use effects of carpal tunnel syndrome. The rules set out in Appendix 2 pertain to the strength requirements of jobs and by their terms are thus not applicable in this case where the plaintiff's restrictions are not wholly related to strength."

For the above stated reasons, Claimant respectfully requests the Court to reverse the decision of the Administrative Law Judge and enter an Order granting benefits.

Respectfully submitted,

/s/ Donald D. Doerr
Donald D. Doerr, Esquire
Doerr & Doerr

## EXHIBIT B

IN THE UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

No. 84-3145

JULIA A. CIMADOR, Appellant,

vs.

MARGARET HECKLER, SECRETARY
OF HEALTH AND HUMAN
SERVICES, Appellee.

ON APPEAL FROM THE ORDER OF
JUDGMENT ENTERED ON FEBRUARY
8, 1984 BY THE HONORABLE UNITED
STATES DISTRICT JUDGE LOUIS
ROSENBERG

CIVIL ACTION NO. 83-0886

BRIEF FOR APPELLANT

TABLE OF CONTENTS

| | Page |
|---|---|
| Table of Authorities | —— |
| Statement of Subject Matter Jurisdiction | —— |
| Statement of Appellate Jurisdiction | —— |
| Statement of the Issue | —— |
| Statement of the Case | —— |
| Statement of Related Cases and Proceedings | —— |
| Statement of the Scope of Review | —— |
| Argument | —— |
| Conclusion | —— |
| Certificate | —— |

Table of Authorities

Cases

| | Page |
|---|---|
| *Fields v. Harris*, 498 F.Supp. 478 (1980) | —— |
| *Mitchell v. Schweiker*, 551 F.Supp. 1084 (1982) | —— |

Statutes

| | |
|---|---|
| 28 U.S.C. § 1291 | —— |
| 42 U.S.C. § 405(g) | —— |

Regulations

| | |
|---|---|
| Social Security Regulations: Rules for Determining Disability and Blindness | —— |

Including

| | |
|---|---|
| Regulations No. 4, Subpart P and | —— |
| Regulations No. 16, Subpart I | —— |

## STATEMENT OF SUBJECT MATTER JURISDICTION

Subject matter jurisdiction for this appeal is based upon 42 U.S.C. § 405(g) (1983).

## STATEMENT OF APPELLATE JURISDICTION

Appellate jurisdiction for this appeal is based upon 28 U.S.C. § 1291 (1982).

## STATEMENT OF THE ISSUE

Whether the Administrative Law Judge erred in failing to grant the Claimant disability insurance benefits upon a finding that she retained the residual functional capacity to perform sedentary work.

## STATEMENT OF THE CASE

Claimant suffered a stroke on the left side of the brain in February, 1950. Her right arm and right leg were affected. Pregnant at the time, her condition caused her to undergo a Caeserian birth. Claimant was married to a very supportive husband, and was able to adjust to being a housewife and mother. Recently when her husband reached retirement age, she learned that she herself might be entitled to disability benefits based on the event in 1950. That is the reason for the long delay in applying.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court previously, and counsel for the Appellant is not aware of any case pending before this Court now, or in the near future, which is in any way related.

## STATEMENT OF THE SCOPE OF REVIEW

The scope of review of the Court in this action is whether it was clearly erroneous for the District Court to conclude that the Secretary's final decision is supported by substantial evidence of record.

## ARGUMENT

Following the "Grid" Rule 201.27 of Appendix 2, Subpart P, Social Security Administration Regulations No. 4, the Administrative Law Judge made a finding that Claimant was not disabled on or before December 31, 1953.

The medical testimony is relatively old, almost thirty-three years, but it is clear in Exhibit 9, (Tr. 73 and 74) that Claimant suffered a right sided hemoplegia caused by a cerebral hemorrhage.

The finding of a residual functional capacity totally ignores the unrebutted testimony of the Claimant that she does not have the ability to perform the full range of movements required for sedentary work.

Even in a sedentary job, Claimant suffers from exertional impairments. She cannot lift ten pounds, she cannot carry dockets, files, ledgers and small tools.

"Q. —in lifting, because you're using one hand?

A. Yes."

"Q. Now, what would that weigh?

A. A couple pounds, a pound anyhow.

Q. A pound.

A. A pound, (inaudible).

Q. Uh-huh.

A. In sauce.

Q. Now, what—what would be the maximum—so with your lifting and using your both hands, you say—you'd estimate it'd be at the most a pound?

A. Well, maybe three pounds, a couple pounds of dry clothes in the clothes basket, maybe.

Q. Do you have—do you lift a clothes basket enough to fill a load in your washer?

A. No, I have to divide. I have a string on my clothes basket, and I drag it with a string." T. 17, R. 36

Claimant has in addition to the lifting problem several non-exertional impairments. She lacks the manipulative ability to use both hands. She cannot stoop or bend.

"A. I couldn't get down on the floor and get up by myself.

Q. Uh-huh.

You mean, like in order to say, scrubbing floors?

A. Uh-huh.

Couldn't slide the toaster plug in and get up, I'd be down on the floor and that was it.

Q. You mean, you had an electric toaster plugged down—

A. I had—

Q. —a low plug?

A. Yes.

Q. You couldn't bend—

A. I could get down, but once I got down, I couldn't get back up." T. 14 R. 33

"Q. Do you ever use both hands to pick up anything?

A. No, because I can't. These fingers are, you know, stiff, and I can't pick up anything. I've broken couple times.

Q. Now, you did pick up something once and you ended up in the hospital under Dr. Franko's care?

A. Yes, but that was with my good hand. I moved something or picked something up that was a little heavy, and I ended up with the torn cartilage on the rib side." T. 20 R. 39

"Q. Essentially you're a one-arm person:

A. Now, I am, yes, sir.

Q. Over the years, you have sustained a number of accidents and burns?

A. Right.

Q. More than what you would consider the average then?

A. Yes. Yes, I'm accident prone.

Q. Are you susceptible or are you afraid of your condition?

A. Yes.

Q. Why?

A. Because, I know that I don't have the whole use—I don't have any use of this arm and I don't have enough to support myself on with one arm." T. 21 R. 40

The Claimant has testified that she is essentially a one-armed person. Her husband Virgil corroborated this on Page 23 of the Transcript, Page 42 of the Record, when he said that Claimant was able to diaper her baby with her left arm and her mouth.

Present case is on "all fours" with Example 1 on Page 72, Section 201, subsection (h) of Social Security Regulations, Appendix 2, entitled Medical-Vocational Guidelines.

*Fields v. Harris*, 498 F.Supp. 478 (1980) involved a pipefitter, under age 45, who sustained multiple injuries from a thirty foot fall including the breaking of his right arm. A finding by the Administrative Law Judge that Claimant could engage in sedentary employment was reversed because several non-exertional impairments were found including a lack of manual dexterity with the following:

> "(17, 18) An individual who has dizzy spells accompanied by nausea 5–10 times every day which causes him to fall down or drop whatever he is holding; with at most 50% use of his right arm; <u>with no ability to perform gross or fine manipulations with his right hand</u>; with pain in his legs, back and neck; with a hearing impairment; and with high levels of depression and anxiety-such an individual is not capable of engaging in substantial gainful activity." (Underlining ours)

Claimant has testified that she is unable to lift ten pounds and thus has an exertional disability which prevents her from doing even sedentary work. In addition, she had non-exertional disabilities. She cannot use her right arm fully, cannot stoop or bend. In *Mitchell v. Schweiker*, 551 F.Supp. 1084 (1982), a female claimant under age 45 was found by the Court not to be able to do her old key punch operation because of the after effects of a carpal tunnel syndrome remedial operation. Her hands were weak and numb.

The Court approved the above quoted illustration from Section 201.99(h) and added:

"We conclude that the plaintiff's impairments include a severe manipulative limitation in that plaintiff is unable to use effects of carpal tunnel syndrome. The rules set out in Appendix 2 pertain to the strength requirements of jobs and by their terms are thus not applicable in this case where the plaintiff's restrictions are not wholly related to strength."

## CONCLUSION

The Appellant submits that the Court should be reversed and an Order should be entered granting benefits to the Claimant-Appellant.

Respectfully submitted,

/s/ Donald D. Doerr

Donald D. Doerr, Esquire

Doerr & Doerr

Date: July 16, 1984