Michael W. MATTER, Sr., Plaintiff,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Defendant.

Civ. No. 83–0454.

United States District Court, M.D. Pennsylvania.

March 23, 1987.

Robert E. Rains, Rains & Jacobsen, Carlisle, Pa., for plaintiff.

James J. West, Asst. U.S. Atty., Harrisburg, Pa., for defendant.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Plaintiff, Michael W. Matter, Sr., initially filed an application for Social Security Disability Insurance benefits on October 23, 1980. He alleged that he became disabled on October 9, 1980 due to "curvatures of the spine, left leg shorter than right" (Tr. 71). He was not represented by counsel at this time, and he did not assert his non-exertional impairments which include illiteracy rooted in neurological dysfunctioning, a short attention span, concentration difficulties and developmental mathematics problems or disorders. His application was denied on December 2, 1980, and he did not seek any further action.

Plaintiff filed a second application for disability benefits on January 20, 1982. On this occasion, he alleged that he became disabled in February 1979 due to "herniated disc—pinched my nerve, HBP, hypertension, back surgery, arthritis in neck, reading problem" (Tr. 77). The second application was likewise denied, and plaintiff sought reconsideration. While his case was pending on reconsideration, he retained legal counsel who from that time forward has represented plaintiff on a contingent fee basis.[1]

On reconsideration, plaintiff's claim was again denied, and he then requested a hearing before an ALJ. In November 1982, the ALJ denied plaintiff's claim, and the Appeals Council adopted the ALJ's decision in February 1983.

Plaintiff filed an appeal by way of a Complaint in this court in April 1983. The parties filed cross summary judgment motions, and Magistrate Raymond J. Durkin issued a Report on November 30, 1984 in which he concluded that the government's findings were not supported by substantial evidence and recommended that this action be remanded to the Secretary. The Magistrate found that the ALJ had failed to give proper consideration to plaintiff's non-exertional impairments other than his illiteracy.

By Order dated February 8, 1984, the court remanded this case to the Secretary. The Appeals Council then remanded the case to an ALJ who conducted hearings on October 19, 1984 and October 26, 1984. In May 1985, the ALJ recommended that plaintiff's claim be denied. In January 1986, the Appeals Council again remanded the case for reconsideration of plaintiff's mental impairments under Section 5 of the Social Security Disability Benefits Reform Act of 1984. An ALJ conducted a fourth hearing in June 1986. In the following month, the ALJ recommended re-opening plaintiff's 1980 application and granting him disability status as of October 1980. The Appeals Council adopted the ALJ's recommendation in October 1986. On November 17, 1986, the court entered judgment, per the parties' stipulation, in favor of plaintiff without prejudice to his right, or the right of his counsel, to apply for attorney's fees.

Presently before the court are motions of plaintiff's counsel for attorney's fees under the Social Security Act (SSA), 42 U.S.C. § 406(b), and the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. These motions and a supporting brief were filed on December 12, 1986. In addition, plaintiff's counsel corresponded with the court by letters dated January 9, 1987 and January 29, 1987, and the Secretary filed a supplement to his briefs on January 21, 1987.

The request of plaintiff's counsel for attorney's fees is now ripe for disposition. For the reasons set forth below, the court will award plaintiff's counsel $4,620.00 under the SSA, will award him $2,338.62 under the EAJA and will direct him to remit $2,338.62 to plaintiff.

## ANALYSIS

### Attorney's Fees under the SSA

 Under 42 U.S.C. § 406(b), when a claimant receives a favorable determination, counsel may obtain a reasonable fee

---

1. "Plaintiff's fee agreement with his counsel calls for a fee of 25% of the back award." Document 25 of the record at ¶ 7. Counsel can seek up to that amount from the court for his court time. He can then petition the Secretary for any deficit between his fee agreement and the court's award for court time as payment for his services rendered at the administrative level.

not in excess of twenty-five percent of the total past-due benefits. The total past-due benefits include the past-due benefits of all recipients on the claimant's Social Security account, *i.e.*, the claimant and his eligible dependents. *Hopkins v. Cohen*, 390 U.S. 530, 88 S.Ct. 1146, 20 L.Ed.2d 87 (1968). The Secretary must approve any fees for counsel's appearance before the Social Security Administration, and a district court may approve fees only for court time. *Guido v. Schweiker*, 775 F.2d 107 (3d Cir. 1985). Since fees granted pursuant to the SSA are deducted from claimants' awards, there are potential conflicts of interest between attorneys seeking compensation under the SSA and their clients, so district courts have an independent duty to scrutinize fee petitions. *Tomallo v. Heckler*, 623 F.Supp. 1046 (W.D.Pa.1985). Finally, twenty-five percent of a claimant's past-due benefits is not an automatic entitlement. *Allen v. Heckler*, 588 F.Supp. 1247 (W.D.N.Y. 1984).

In the present case, plaintiff's counsel seeks attorney's fees of $8,408.25 for 30.8 total court hours. The Secretary has not contested the total court time alleged, and 30.8 hours does not appear to be excessive under the circumstances of this case. Furthermore, plaintiff's counsel seeks a monetary amount which is less than twenty-five percent of the total past-due benefits awarded to plaintiff and his dependents.[2]

The sole question, then, concerning the fee request of plaintiff's counsel under the SSA is whether the amount sought is reasonable. The Secretary contends that the amount requested is unreasonable because it equates to a fee in excess of $270.00 per hour. Document 30 at p. 2. The Secretary argues that plaintiff's counsel should be compensated at a flat rate of $75.00 per hour, for a total fee of $2,310.00 for counsel's court time. *Id.*

In determining the reasonableness of the fee requested by plaintiff's counsel, the court will follow the approach utilized in *Andrews v. Bowen*, 640 F.Supp. 1001 (W.D. N.C.1986).[3] The court in *Andrews* stated:

> [T]he number of hours spent by an attorney on a case is only one factor for the court to consider.... [Plaintiff's attorney] did the plaintiff a great service. Without that service, plaintiff probably would have recovered nothing of the defendant and would not be receiving disability benefits today. Courts must carefully consider the deterrent effect that whittling down fee agreements would have on whether future plaintiffs can find lawyers to take their cases. It would not serve the remedial intent of Congress if the court should arbitrarily limit counsel's fee to some multiple of the number of hours he spent on the case.

640 F.Supp. at 1004. The *Andrews* approach, then, determines the reasonableness of a fee request not by comparing it to a fixed rate but by examining it in light of six specific factors.[4]

---

**2.** Plaintiff was awarded past-due benefits in excess of $19,000.00, and an additional $8,408.25 was withheld for legal fees. Document 25 at ¶ 3. Plaintiff's wife and two children were also awarded past-due benefits of $5,957.60 each, with deductions of $1,396.90 from each award for legal fees. Document 31. It appears, then, that plaintiff's counsel, consistent with the SSA and his fee agreement with plaintiff, could have asked the court to approve a fee of up to $12,-598.95 for his court time. *Id.*

**3.** Although the court finds merit in the approach set forth in *Andrews*, it does not necessarily endorse the result reached in that case. There, the court awarded to an attorney a fee of $5,000.00 for 1.9 hours of court-related services.

The Secretary appealed the *Andrews* decision. Document 30 at p. 3. The Clerk of Court for the Fourth Circuit indicates that the appeal was

docketed on October 8, 1986, No. 86–1689, and that the case is scheduled for argument before a three-judge panel on April 7, 1987 in Richmond, Va.

**4.** The court declines to follow in this instance a line of cases emanating from the Western District of Pennsylvania which simply award the "product" of the number of hours reasonably expended and the hourly rate of $75.00 (the rate uniformly presumed by the Western District to be reasonable hourly compensation). *See, e.g., Cimador v. Secretary of Health and Human Services*, 645 F.Supp. 1273 (W.D.Pa.1986); *Tomallo v. Heckler*, 623 F.Supp. 1046 (W.D.Pa.1985); and *Bailey v. Heckler*, 621 F.Supp. 521 (W.D.Pa. 1985). Although these cases indicate that the "product" derived can be adjusted to reflect the quality of work and/or the contingent nature of the fee, the court is not aware of any cases from

The six factors employed in the *Andrews* approach are as follows: (1) the time and labor required; (2) the skill required; (3) the contingent nature of the fee; (4) the amount involved and the result obtained; (5) the experience, reputation and ability of the attorney; and (6) awards in similar cases. 640 F.Supp. at 1003.[5]

*Factor 1:* The 30.8 total court hours of plaintiff's counsel include time expended on preparing the Complaint, plaintiff's Motion for Summary Judgment, a thirty-five page Brief in Support, an Answer to the Secretary's summary judgment motion, and Exceptions to the Magistrate's Report. Paragraph 5 of affidavit of plaintiff's counsel which is attached to Document 26. The total court hours also include time spent during several communications with plaintiff and his dependents, the United States Attorney's Office and the court. *Id.*

*Factor 2:* "Social security cases in general require considerable knowledge of the statute, the regulations and grids, of medical terminology and documentation, and of an everburgeoning body of case law." *Andrews v. Bowen, supra,* at 1003.

A high level of skill was required to litigate the present action. By the time the case reached this court, the Social Security Administration had denied plaintiff's claim at every phase of the administrative proceedings. Nonetheless, plaintiff's counsel persuaded the court to remand the case on grounds directly raised by counsel. Moreover, the arguments which plaintiff's counsel asserted before the court appear to have been a major impetus behind the eventual reversal of the Secretary's position.

*Factor 3:* As noted above, the Secretary maintains that plaintiff's counsel should be compensated for his court time at a flat rate of $75.00 per hour. The court questions the fairness of the Secretary's proposal since plaintiff's counsel could not request payment promptly upon the rendition of his services. In short, counsel performed the vast majority of his court-relat-

ed services in 1983 and has still not received any compensation. Moreover, since he worked under a contingent fee arrangement, he faced the distinct possibility that he would never receive any compensation for his court time, especially in light of the consistent denial of plaintiff's claim at the administrative level. The rate suggested by the Secretary simply does not reflect these factors.

*Factor 4:* Plaintiff's counsel eventually obtained complete success. As a result, in part, of counsel's efforts before the court, plaintiff and his dependents received large back awards of past-due benefits. *See* note 2, *supra.* In addition, they are currently receiving benefits in excess of $500.00 per month. Since plaintiff is only forty years old and since no physical or mental improvement is predicted, it is likely that the monthly benefits will continue for at least several years and possibly for the balance of his entitlement.

*Factor 5:* Plaintiff's counsel began his social security practice in 1979. Paragraph 2 of affidavit of plaintiff's counsel which is attached to Document 26. Since then, he has represented more than eighty claimants in social security administrative hearings and appeals. *Id.* Over this same period, he has taught a law school seminar which covers social security law. *Id.* He is a member of the National Organization of Social Security Claimants' Representatives and addressed this group at its annual national conference in 1986. *Id.* He also organized a continuing legal education program in 1986 on handling social security disability claims at which he lectured on federal district court practice. *Id.* Finally, he is a member of the Pennsylvania Bar Association subcommittee on legal services for the mentally and physically disabled. *Id.*

*Factor 6:* For examples of cases utilizing similar reasoning and awarding fees in excess of $75.00 per hour, see *Petrella v.*

---

the Western District in which the "product" was increased.

5. The method of reviewing a fee request under certain enumerated factors is not unique to the

*Andrews* decision. *See, e.g., Wiggins v. Heckler,* 639 F.Supp. 126 (E.D.N.C.1986) (eleven factors); and *Bailey v. Schweiker,* 537 F.Supp. 173 (W.D. Va.1982) (twelve factors).

*Secretary of Health and Human Services,* 654 F.Supp. 174, 178–79 (M.D.Pa.1987) (Muir, J.) ($100.00 per hour fee awarded under SSA and EAJA; "[t]his was not a complicated case which required extraordinary skill"); *Hutchinson v. Heckler,* 612 F.Supp. 264 (E.D.Wis.1985) ($14,635.20 fee awarded for "more than one hundred hours"); and *Bailey v. Schweiker,* 537 F.Supp. 173 (W.D.Va.1982) ($4,000.00 fee awarded for 41.3 court hours).

■ In light of the above discussion, particularly the high quality of counsel's work before the court and the unusual circumstances of this case, the court determines that a fee of $4,620.00, computed at a rate of $150.00 per hour for 30.8 total court hours, is reasonable and will award the same to plaintiff's counsel under 42 U.S.C. § 406(b).

*Attorney's Fees Under the EAJA*

It is settled in the Third Circuit that the EAJA applies to judicial review actions brought pursuant to the Social Security Act, 42 U.S.C. § 405(g). *Brown v. Secretary of Health and Human Services of the United States,* 747 F.2d 878 (3d Cir.1984); *Tressler v. Heckler,* 748 F.2d 146 (3d Cir. 1984).

The EAJA provides that "a court shall award to a prevailing party other than the United States" reasonable attorney's fees and expenses, in addition to costs, "incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(2)(A)(ii).

There are, then, two prerequisites for an award of attorney's fees pursuant to the EAJA. First, the court must determine that the claimant is a "prevailing party." If this condition is satisfied, the court must determine whether the government's position was "substantially justified."

In the present case, there is no dispute that plaintiff is a prevailing party. Following the Secretary's denial of plaintiff's claim, the court remanded the case, and an ALJ and the Appeals Council eventually ruled in plaintiff's favor and granted him benefits.

■ With regard to the second prerequisite of the EAJA, the Court of Appeals for the Third Circuit has interpreted the substantial justification standard as "a middle ground between an automatic award of fees to a prevailing party and an award made only when the government's position was frivolous." *Dougherty v. Lehman,* 711 F.2d 555, 563 (3d Cir.1983) (citations and footnote omitted). The substantial justification standard is "essentially one of reasonableness, not in terms of result, but in terms of whether the government's position, even though unsuccessfully taken, had a 'reasonable basis both in law and fact.'" *Id.* (citing *Natural Resource Defense Council, Inc. v. USEPA,* 703 F.2d 700, 721 n. 7 (3d Cir. (1983)). An absence of substantial justification should not be presumed merely from a finding that the government's action was not supported by substantial evidence. *Washington v. Heckler,* 756 F.2d 959 (3d Cir.1985). Nonetheless, the Secretary's "burden of showing substantial justification is a strong one and is not met merely because the government adduces 'some evidence' in support of its position." *Id.* at 961.

In *Dougherty v. Lehman, supra,* the court set forth a three-part test which the government must satisfy in order to sustain its burden of demonstrating substantial justification:

First, [the government must] show that there is a reasonable basis in truth for the facts alleged in the pleadings. If no such basis for the government's factual allegations exist [sic], then the government's position may well be held not to be 'substantially justified.'

Second, the government must show that there exists a reasonable basis in law for the theory which it propounds. This is not to say that the government need demonstrate that there is a substantial probability that the legal theory advanced by it will succeed. . . .

Finally, the government must show that the facts alleged will reasonably support the legal theory advanced. Thus, having met these requirements, if the government's legal theory, as applied to the facts, reasonably supports the Secretary's position, even though the government may not have ultimately prevailed, then the government will have proven that the 'position of the United States was substantially justified.' 28 U.S.C. § 2412(d)(1)(A).

711 F.2d at 564. *See also Stokes v. Brown,* 811 F.2d 814 (3d Cir.1987).

■ The court concludes that the Secretary has not met his burden of establishing substantial justification. The Secretary has not shown a reasonable factual basis for the government's original response to plaintiff's claim, and this stems from the government's failure to give proper consideration to uncontroverted evidence supporting plaintiff's complaints of lower back pain as well as uncontroverted evidence of non-exertional impairments.

First, following plaintiff's initial hearing, the ALJ improperly minimized the physical basis for plaintiff's assertions of lower back pain. In his November 8, 1982 decision, the ALJ stated:

> Due to recurrent complaints, the claimant was rehospitalized in November 1980 for a complete workup of his low back problem. A CAT scan was performed which revealed a bulging of the annulus, fibrosis at L3–L4 and a possible bulge at L5–S1. A myelogram revealed an extradural defect at L3–L4. The claimant subsequently underwent exploratory surgery of his back which did reveal some bulging on the discs but not enough to account for the claimant's symptoms. Therefore, the disc was left intact. The claimant, however, improved following this surgery.

(Tr. 11). Similarly, in its September 9, 1983 brief in support of its summary judgment motion, the government remarked:

> In November 1980, plaintiff was rehospitalized due to recurrent complaints. A CAT scan was performed which revealed a bulging of the annulus, fribrosis at

L3–L4 and a possible bulge at L5–S1. A myelogram revealed an extradural defect at L3–L4. Plaintiff subsequently underwent exploratory surgery of his back which revealed some bulging of the discs but not enough to account for the plaintiff's complaints. Therefore, the disc was left intact. Thereafter, plaintiff improved and was discharged on November 28, 1980 with minimal back pain.

(p. 3).

The characterization of plaintiff's surgery as "exploratory" led the Secretary to conclude that plaintiff was not "fully credible as to the severity of his pain or its affect on his ability to engage in substantial gainful activity" (Tr. 15). Plaintiff's back surgery, however, was "corrective," not merely "exploratory." During that operation, plaintiff underwent a partial laminectomy of 60% bilaterally at L3 (Tr. 151). The government ignored this important aspect of the November 1980 operation.

Second, plaintiff was examined at the government's direction by Dr. Leonard Cohen, Ed.D., a clinical psychologist. Dr. Cohen found that plaintiff is illiterate and that his physical stamina and concentration are poor (Tr. 159–60). Dr. Cohen observed that in addition to a back problem, plaintiff suffers from a developmental reading disability which is rooted in neurological dysfunctioning, a short attention span, concentration difficulties and developmental mathematics problems or disorders. *Id.* Dr. Cohen concluded that under these circumstances, plaintiff is disabled. *Id.*

A vocational expert testified at plaintiff's initial hearing, and the ALJ asked him to assume the following: that plaintiff could do unskilled work at the sedentary level, or semi-skilled work at the sedentary level using transferable skills, but that plaintiff is limited by being illiterate and not being able to follow written instructions, although he could follow oral instructions and communicate in the English language (Tr. 58, 62). On the basis of this description, the vocational expert identified a number of jobs which he thought plaintiff could perform.

If plaintiff's only non-exertional impairment were illiteracy, the ALJ could competently rely on the vocational expert's response to his inquiry. Dr. Cohen's conclusion that plaintiff is disabled, however, was not based on illiteracy alone—it was also founded upon plaintiff's short attention span, his concentration difficulties and his mathematics problems or disorders. The ALJ never asked the vocational expert to consider these crucial factors.

The Secretary maintains that the government's position was substantially justified since plaintiff worked for five weeks in 1981 and was fired solely because of his illiteracy. On the basis of this one incident, the Secretary argues, "[I]t seems clear that any lack of concentration or attention span or developmental math problems were not so significant as to preclude unskilled jobs in general...." Document 29 at p. 5. The court cannot accept the Secretary's logic that plaintiff's brief work interval in 1981, which terminated due to his illiteracy, was reliable evidence that plaintiff's other non-exertional impairments did not render him disabled. The Secretary's contention is particularly tenuous in light of the fact that Dr. Cohen, the government's own expert, determined in 1982 that plaintiff was disabled.

The Secretary also argues that the reversal of the government's position was triggered by new evidence and new regulations. Document 29 at p. 5. The Secretary did not, however, identify any new evidence. Furthermore, the court cannot expect the Secretary to anticipate new regulations, but it still must evaluate the Secretary's initial position to determine if it was substantially justified under standards in existence when that position was formulated. *Petrella v. Secretary of Health and Human Services, supra,* at p. 177; and *Richcreek v. Secretary of HHS,* No. 83–0468, slip op. at 6 (M.D.Pa. Sept. 4, 1986) (Nealon, C.J.). Non-exertional impairments were generally taken into account in examining disability status prior to the adoption of the new regulations. *See, e.g., Washington v. Heckler, supra;* and *Burnam v. Schweiker,* 682 F.2d 456 (3d Cir.1982).

For the foregoing reasons, the court finds that the Secretary's original position was not substantially justified. Therefore, the court will award plaintiff's counsel $2,338.62 under the EAJA.[6] Since the court has awarded fees under both the SSA and the EAJA, counsel must remit the amount of the smaller fee award to plaintiff.[7]

An appropriate Order will enter.

### ORDER

NOW, this 23rd day of March, 1987, in accordance with the reasoning set forth in the accompanying Memorandum IT IS HEREBY ORDERED THAT:

(1) Plaintiff's counsel is awarded legal fees for court representation under 42 U.S.C. § 406(b) in the amount of $4,620.00. Defendant is directed to pay this fee out of the amount withheld from plaintiff's back award within sixty (60) days of the date of this Order.

(2) Plaintiff's counsel is awarded legal fees for court representation under 28 U.S.C. § 2412 in the amount of $2,338.62. Defendant is directed to pay this fee within ninety (90) days of the date of this Order.

(3) Plaintiff's counsel is directed, upon his receipt of the smaller fee award, to immediately remit the same to plaintiff as reimbursement of fees

---

**6.** An award of counsel fees under the SSA does not preclude an award of counsel fees under the EAJA in the same case. *Petrella v. Secretary of Health and Human Services, supra,* at pp. 3–4; *Meyers v. Heckler,* 625 F.Supp. 228 (S.D.Ohio 1985); and *Eustache v. Secretary of Department of Health and Human Services,* 601 F.Supp. 176 (E.D.N.Y.1985).

The amount of $2,338.62 represents $2,310.00 for counsel fees (computed at a rate of $75.00 per hour for 30.8 total court hours) and $28.62 for costs.

**7.** If compensated under both the SSA and the EAJA, counsel must give the amount of the smaller fee to the claimant to avoid double recovery for the same services. H. Newberg, Attorney Fee Awards 296 n. 44 (1986) (citing H.R.Rep. 120, pt. I, 99th Cong, 1st Sess 20, *reprinted in* 1985 U.S.Code Cong. & Ad.News 132, 148–49).

granted to counsel under paragraph (1) of this Order.